## Thackray's Appeal.

1. A guardian leased his wards' house and received $500 for the good-will in addition to the rent; the lessee with his consent assigned the lease to Binder and before the expiration of the term, the guardian leased to Binder for an increase of $100 rent per annum, but received nothing for the good-will. Binder with the assent of the guardian assigned the lease and received for the good-will $1350. *Held* that the guardian was not chargeable for the value of the good-will not received by him.

2. The good-will was not to be considered separately from the rental; it being for the purposes of leasing a part of the premises, its value to be considered in fixing the rent.

3. Under the circumstances the court surcharged the guardian with an increased rent for the premises, the good-will enhancing it.

January 16th 1874.   Before AGNEW, C. J., MERCUR and GORDON, JJ.   SHARSWOOD, J., at Nisi Prius.

Appeal from the decree of the Orphans' Court of *Philadelphia:* No. 268, to January Term 1872.

In the matter of the account of John S. Thackray, guardian, &c., of Charles W. Sainter and Richard Sainter, minor children of Richard J. Sainter, deceased.

The account was referred to E. Hunn, Jr., Esq., as auditor, to audit, settle and adjust, and report a distribution of the balance.

The only question considered on this appeal was the liability of the guardian to be charged with the value of the good-will of a tavern belonging to the minors, the guardian having rented without receiving anything for the good-will.

The facts of the case will sufficiently appear by the following portion of the auditor's report, and the opinion of the Supreme Court.

"* * * Richard J. Sainter, the father of the said minors, died intestate in the year 1859, leaving his widow, Catharine Sainter, since Catharine Doyle, and his two minor sons, Charles W. and Richard Sainter, all of whom are still living.

"The property of the said decedent at the time of his death consisted of a three-story brick house, with three-story back buildings, with a front on Fifth street of eighteen feet, situated at the north-west corner of Fifth and Redwood streets, and used at that time and since as a hotel.

"John S. Thackray was appointed guardian of said minors on the 3d day of June, A. D. 1859.

"The debts against the estate of deceased were about eight hundred dollars in all, and as there was not sufficient ready money on hand to pay them, the accountant, with the permission of the court, gave a mortgage on the premises for the sum of one thousand dollars, and proceeded to liquidate the debts. The said premises being the only real estate left by testator, who at the time of his decease was doing a poor business, which not showing

any signs of improvement in the hands of his widow after his death, the accountant executed a lease for them to John Miller on the 1st day of December, A. D. 1859, for the term of five years, ending on the first day of December, A. D. 1864, for the annual rent of three hundred dollars, and received from Miller five hundred dollars in cash for the good-will of the premises. In the lease was the following clause :—

" ' It is further agreed that upon the expiration of his term, the said Miller shall have no claim to the fixtures which are now in, or which may be put in the said premises, nor any claim for good-will.'

"John Miller did a poor business, and in the year 1860 sold out his unexpired term to John Binder by assignment in writing, with the knowledge of accountant, and received from said Binder the sum of seven hundred dollars in consideration of the unexpired term, good-will and fixtures.

"Several months prior to the expiration of the term of the lease, and about two years prior to the time when Charles W. Sainter, the eldest of said minors, reached his majority, the accountant executed a new lease to John Binder for the premises, for a term of eight years, commencing on the first day of December, A. D. 1864, the date of the expiration of the term of the last mentioned lease, for a rent of four hundred dollars a year. The second lease was dated the 6th day of July, A. D. 1864. It contained the following clause :—

" ' It is further agreed that upon the expiration of his term the said John Binder shall have no claim to the fixtures which are now in or which may be put in the said premises, nor shall he have any claim for good-will. It is further agreed that the said John Binder is to keep the said premises in repair at his own expense.'

"For this eight years' lease accountant neither asked nor received any sum of money from the tenant Binder, other than the four hundred dollars per year rent; nothing was said about the good-will or fixtures, but it seems the mother of said minors was consulted by accountant before the execution of the lease. At this time the tenant Binder was doing a good business on the premises.

"On the said 1st day of December, A. D. 1864, Binder assigned the last mentioned lease to John Himmilsbach with the consent of the accountant, by a written assignment endorsed, and dated December 1st 1864 ; and received in consideration of the transfer and of the good-will and fixtures and stock on the premises, $1450: at the time of the transfer the value of the stock was $100 ; leaving $1350 the amount paid for the good-will and fixtures. On the 20th of July 1865 accountant served a written notice on Himmilsbach, saying that he had heard Himmilsbach had underlet the premises, and requiring him to repossess the same. On the 21st of July,

A. D. 1865, Himmilsbach assigned, but did not deliver, the last-mentioned lease and the unexpired term thereof to Carl Fuchs, by a written assignment also endorsed on the lease, and dated July 21st 1865 ; he received in consideration thereof $500 at the time and $1000 eleven months afterwards, having given possession of said premises to Fuchs a few days subsequent to the date of the assignment. It was shown also that an additional sum of $200 was paid by Fuchs to Himmilsbach subsequently to the payment of the $1000 last mentioned, and under the following circumstances : At the time of the payment of the said $1000, the lease and assignment not having been yet delivered, Himmilsbach refused to deliver them until a further sum of $200 should be paid him by Fuchs. Fuchs then went to see accountant, who said he did not know Fuchs, and refused to approve the assignment.   Fuchs returned to Himmilsbach and informed him of accountant's refusal to approve the transfer.   Two days after this Fuchs paid the $200 to Himmilsbach and Himmilsbach delivered to Fuchs the lease with the assignment endorsed thereon, dated as above mentioned, and signed as a witness by accountant, after which accountant acknowledged Fuchs as his tenant.   Of this $200, $25 were paid to the mother of the said minors ; and a like sum was handed about the same time to the accountant, who charged himself with it in his account.

" The minors claimed that accountant had been guilty of a breach of duty in letting the premises on an eight-year lease, when the eldest of said minors was within less than two years of being twenty-one years of age, and testimony was adduced to show that a much greater sum than $400 might readily have been obtained per year for said premises at the end of the year 1864, as well as a bonus for the letting of the premises for so long a term, and for the good-will and fixtures, and the minors asked the auditor to surcharge accountant with from $200 to $300 per year from the 1st day of December, A. D. 1864 to the present time.

" Testimony was also offered by accountant to show that the rent was sufficient, and that it was not customary to ask a bonus after the first letting.

" After a careful review of the testimony on both sides as to these points, your auditor concludes that the rent might perhaps have been a fair one, had a proper bonus or price been obtained for the term, good-will and fixtures ; but cannot approve the action of accountant in granting so long a lease under the circumstances.

" It will be observed that the premises were let by accountant for five years, from December 1st 1859, at a rent of $300 per year ; and that he received a bonus of $500 at the commencement of the term for the good-will, which with the fixtures were to remain the property of the tenant for the term of five years only. Accountant therefore had the power, and the auditor conceives it to have been his duty, to sell the said good-will and fixtures, at the

[Thackray's Appeal.]

expiration of said term, for as much as he could obtain from a purchaser for the new term ; which from the testimony must necessarily have been for a much greater sum in 1864 on an eight years' lease, than in 1859 on a five years' lease; and this was shown by the actual sale of said good-will and fixtures, together with the stock in 1864 by the then tenant Binder to Himmilsbach, for the sum of $1450, the stock being worth only $100; as well as by the fact that Himmilsbach sold his unexpired term, good-will and fixtures, &c., to Fuchs for an advance, only a short time subsequent to Himmilsbach's purchase from Binder. It is evident from these facts, and from the consent of accountant to each successive transfer, that the accountant actually presented the good-will and fixtures of the premises in question to John Binder, notwithstanding the fact that they were part of the estate of his wards; and that Binder and the tenants, his successors, speculated successfully by selling the gift, one to another; each one realizing a handsome profit on his bargain.

" In view of the above, your auditor deems it his duty to surcharge accountant with $1350, which sum is the difference between the amount obtained by Binder from Himmilsbach, and the value of the stock on the premises as above stated.   *   *   *

" Counsel for accountant relied on the decision in Springer's Estate, 1 P. F. Smith 342, as relieving accountant from all liability from being surcharged with the value of the good-will and fixtures ; but it seems to your auditor that ' supine negligence,' if not ' wilful default,' is observable in this case."

The auditor accordingly surcharged the accountant with $1350, at which he valued the good-will and fixtures.   He also surcharged the accountant with other sums, and distributed the whole balance which he found to be due by the accountant in equal proportions between the widow and two children.

Upon exceptions by the accountant, the Orphans' Court struck out the other surcharges, but retained that for the good-will, and with that alteration confirmed the report of the auditor.

The guardian appealed to the Supreme Court, and assigned the decree of the Orphans' Court for error.

*F. C. Brewster* (with whom were *F. C. Brewster, Jr.,* and *G. H. Armstrong*), for appellant.—To surcharge the guardian there must be satisfactory proof of supine negligence or wilful default: Moore's Appeal, 10 Barr 438 ; Springer's Estate, 1 P. F. Smith 345 ; Neff's Appeal, 7 Id. 96 ; Palmer *v.* Jones, 1 Vern. 144. If there was no mala fides, nothing wilful in the conduct of the trustee, the court will always favor him: Knight *v.* The Earl of Plymouth, 3 Atk. 480.   Trustees cannot be charged with more than they actually received, without wilful default: Pybus *v.* Smith, 1 Ves., Jr., 193 ; Rowth *v.* Howell, 3 Id. 565 ; Osgood *v.* Franklin, 2 Johns. Ch. Rep. 1 ; Thompson *v.* Brown, 4 Id. 619 ; Pim *v.* Down-

[Thackray's Appeal.]

ing, 11 S. & R. 66; Johnson's Appeal, 12 Id. 317; Konigmacher's Appeal, 1 Penna. R. 215; Stem's Appeal, 5 Whart. 472. All that a court of equity requires from trustees is common skill, common prudence and common caution: Calhoun's Estate, 6 Watts 185; Crist *v.* Brindle, 2 Rawle 122; Eyster's Appeal, 4 Harris 376; Vez *v.* Emery, 5 Ves. 144.

*J. Dolman* (with whom was *E. Fox*), for appellees, cited on the subject of a trustee's liability: Johnston's Estate, 9 W. & S. 107; Beckley's Appeal, 3 Barr 426; Blackburne's Appeal, 3 Wright 160; Pim *v.* Downing, 11 S. & R. 66; Wills's Appeal, 10 Harris 325.

The opinion of the court was delivered, March 9th 1874, by

MERCUR, J.—Five assignments of error have been filed, yet the only question is substantially raised by the fourth. It is this: Shall the appellant be surcharged with $1350, the alleged value of the good-will of the hotel, which it is claimed he ought to have demanded and received from the tenant? The hotel property was owned by the two wards of the appellant, subject to their mother's right of dower. Thus each of them was entitled to one-third of the rents. It appears that the appellant leased the whole property, collected the rents, and, in settling his account in the Orphans' Court, charged himself with the whole amount. By the decree of the court below, the appellant is ordered to pay to said widow one-third of the sum with which he is charged, thus making an equitable distribution in an irregular manner. No objection, however, is made to his having blended the money of the widow with that of his wards.

Upon a former occasion, the appellant had leased the premises for a term of five years, at an annual rental of $300. As part of the arrangement, he also received from the lessee the gross sum of $500 for the good-will. It was expressly stipulated in the lease, that upon the expiration of the term, the tenant should have no claim to the fixtures which were then in or might be put in said premises, nor any claim for good-will. With that disposition of the good-will, no complaint is made. During the first year of the term, the lessee, with the knowledge of the lessor, assigned the lease to one John Binder. He entered into possession and paid the subsequent rent. Several months prior to the expiration of the term, the appellant leased the premises to said Binder for the further term of eight years, at the annual rental of $400, the lessee agreeing to keep the premises in repair at his own expense. The appellant did not charge nor receive anything specifically for the good-will. This lease contained the same stipulation as the former one, excluding the lessee from all claim for fixtures and good-will at the expiration thereof.

[Thackray's Appeal.]

After expending $250 in improving the premises, Binder, at the commencement of the new term, assigned the lease, with the assent of the lessor, to one Himmilsbach, receiving for the same and for the good-will and fixtures $1350.

The auditor found and the court below held, the appellant to have been guilty of supine negligence or wilful default, in not demanding of and receiving from Binder payment for the good-will, and therefore surcharged him with the $1350.

It does not appear that any other person offered to pay the appellant more than $400 per annum for the use of the property, nor to pay him for the good-will any sum whatever. The appellant evidently considered this letting as substantially a renewal of the lease to Binder. If it had been technically so, the whole evidence shows that it was not customary to charge for the good-will. The evidence also shows that the bargain was made, and the lease executed, with the advice and approval of the mother. Then, whatever the equities of the minor children may be, it is clear that she cannot with any justice require the appellant to pay her any portion of the excess beyond the sum stipulated in the lease. There is no proof that she was deceived or in any manner defrauded by the appellant. She, then, has no equities to invoke and no wrongs to right against him. Hence it follows that the mother is bound by the lease, and the appellant cannot be surcharged for her benefit with any supposed or actual separate value of the good-will. In so charging him the learned judge erred.

It seems to us to be improper to consider the good-will separately from the rental. It was an incident so intimately blended with the house, that for purposes of leasing, it should have been deemed a constituent part of the premises. Its integral character should have been recognised as one of the elements in fixing the value of the rental of the whole property. The auditor found that $400 would have been a fair annual rental of the property, if the appellant had also further received a separate and just compensation for the good-will; but as the appellant had not, the auditor surcharged him $1350 for the good-will of the whole term, beyond the sum stipulated in the lease. The court confirmed this finding; therein we think it erred. During the first lease for five years, the appellant received a sum equal to $100 only per annum for the rental of the good-will. That was satisfactory to the appellees. It is not shown that the appellant had any just reason to suppose the annual rental of the good-will was worth any more during the second term than during the first term. In fact the weight of evidence clearly establishes that the appellant should not have charged a tenant under a renewed lease for the good-will. This was practically Binder's position. He had once paid for the good-will, and had been recognised as a tenant by the lessor.

We think, under the whole evidence, $500 would have been a

fair annual rental for the premises, including the good-will. The mother, however, having by her action precluded herself from claiming more than one-third of the sum stipulated in the lease, the appellant should be surcharged with two-thirds only of the $100 per annum; that is, with the gross sum of $533.33, which sum should be paid to Charles W. Sainter and Richard Sainter. There was therefore error in the amount in which the appellant was surcharged, as well as in its distribution.

> Decree reversed and record remitted, in order that a decree may be entered, surcharging the appellant with $533.33, and a distribution thereof be made conformably to this opinion. The costs of this appeal to be paid by the appellees.