SIMEON FARWELL *et al.*

*v.*

EDWARD C. HULING.

*Filed at Ottawa January 21, 1890.*

1. MASTER'S REPORT—*exceptions thereto—requisites.* A party in chancery can not, by general exceptions to a master's statement of a partnership account, require the chancellor, or a court of review, to go over the entire record and re-state the account.

2. SAME—*sufficiency of exceptions—as to statement of partnership account—in respect to value of the good will of the business.* To a master's report of his statement of a partnership account, the complainant in the suit excepted that the master had allowed him only $5000 for his interest in the good will of the business, whereas it should have been estimated at $25,000, and that the master found there was a loss in the business when he should have found a gain and profit therein. The defendant excepted that the master had credited complainant with $5000 as the value of his good will in the firm, when, in fact, such good will had no value : *Held,* that these exceptions were substantially good.

3. SAME—*insufficiency of exceptions—no ground of reversal.* A decree of the circuit court will not be reversed for mere insufficiency in the form of exceptions to the master's statement of an account. A judgment will not be reversed for mispleading, or insufficiency of pleading, or other default or negligence which injures neither party.

4. SAME—*master's report—whether based upon proper evidence.* A master's report of his statement of a partnership account showed that it was based upon a statement made by one of the parties, sworn to by him as being made from the firm books, and as being a correct statement of the financial condition of the firm at the date of the dissolution, and also showed that the books from which the statement was made were produced and in evidence before him. The report also showed that no one in behalf of the other party offered any figures to show the condition of the business at the dissolution : *Held,* that the report did not show that the finding was based on improper evidence, as either party had a right to make statements from their books, and show their correctness by oath and by the books.

5. GOOD WILL—*in partnership business—in what it consists.* The good will of a partnership may be defined as every possible advantage acquired by the firm in carrying on its business, whether connected with premises, or name, or other matter. If a partner claims to be allowed for his part of the good will on a dissolution and settlement of the partnership, he must show its value by proper evidence.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. O. H. HORTON, Judge, presiding.

On the 18th of October, 1884, Edward C. Huling, appellee, Henry S. Farwell and Stephen Laskey formed a co-partnership, in the city of Chicago, for the purpose of carrying on the business of "manufacturing and jobbing men's furnishing goods," with a capital of $60,000, $40,000 of which was to be furnished by Farwell, and $20,000 by Huling,—Farwell and Huling each to have forty-five per cent, and Laskey ten per cent of the profits, the firm to continue until January 1, 1890. The business was continued less than nine months, the firm dissolving by mutual consent July 29, 1885. Huling sold his interest to Farwell, the parties agreeing that the price to be paid therefor should be fixed by an arbitrator then agreed upon. In pursuance of that agreement an award was made, but it proved unsatisfactory to Huling, and on August 12, 1885, he filed this bill to set the same aside, and for an accounting and settlement of the partnership business. By an interlocutory decree the award was set aside, and the cause referred to a master to state the account between the partners as of July 29, 1885, and to find the value of Huling's interest in the assets and good will in the business at that date.

On the 28th of October, 1888, the master made his report. As to the value of Huling's interest in the assets, exclusive of good will, this report shows that he was indebted to the firm on July 29, 1885, in the sum of $3403.30, but that the value of his good will at that date was $5000, making a balance in his favor of $1596.70. Objections to this report were filed by both parties before the master, and afterwards renewed, by way of exceptions, in the circuit court. Those filed on behalf of Huling are as follows: First, the said master found that the value of Mr. Huling's interest in the good will of the firm was $5000 on July 29, 1885, whereas he should have found

his interest therein at the time was $25,000; second, that said master took into consideration, in making up his report, testimony of witnesses taken before the court on behalf of said defendants as to the value of the good will of the business at the date of the dissolution, and prior thereto, based upon certain figures which were afterwards found by the court expert to be incorrect; third, that the master permitted fragmentary statements gathered from the books of the firm by the defendants themselves; fourth, that said report is against the weight of evidence; fifth, that the master considered statements taken from the books of the firm by said defendants which were unreliable, inaccurate and entirely untrustworthy; sixth, that said master erred in the admission of testimony on behalf of said defendants. Also the following: "Complainant further excepts to the master's report on the ground, that whereas the master has found that there was a loss in the business of said firm on the 29th of July, 1885, he should have found that there was a gain and profit in said business on that date." This exception was filed *nunc pro tunc* after decree rendered.

Those filed on behalf of defendants Farwell and Laskey, which were renewed as exceptions, were: First, that the master found that the complainant was entitled to be credited in his account with the sum of $5000 as the value of his good will in the firm, when, in fact, said good will had no value; third, that said master found that complainant was entitled to recover $1596.71, instead of finding that the defendants were entitled to recover from the complainant not less than the sum of $4000; fourth, that the finding of the master with reference to the good will of the business of said Farwell, Huling & Co., and the right of complainant to recover against defendants, are not sustained by proofs taken or submitted to him.

Upon a hearing on these exceptions, in the circuit court, all were overruled, except those filed on behalf of defendants questioning the correctness of the master's finding as to the value of the good will of complainant in the firm business,

which were sustained, and a decree rendered in favor of defendants for $3403.29. On appeal by complainant, the Appellate Court for the First District held that all the exceptions filed were so indefinite and uncertain that neither party could be allowed to question the correctness of the master's report, and declined to consider the case as there presented, but reversed the decree of the circuit court for error in failing to overrule each of said exceptions, because of their insufficiency, and remanded the cause, with directions to the circuit court to overrule those exceptions which had been sustained, as well as all others, and enter a decree for complainant against defendants for $1596.70, with costs. The defendants below prosecute this appeal, and assign for error said judgment of the Appellate Court.

Messrs. Flower, Smith & Musgrave, for the appellants.

Messrs. Hoyne, Follansbee & O'Connor, for the appellee.

Mr. Justice Wilkin delivered the opinion of the Court:

An attempt, at least, was made in the proceeding below to follow the recognized chancery practice in such cases. The cause was referred to the master to state an account. Parties appeared before him and made objections to his findings, and on the coming in of his report they filed exceptions thereto corresponding with the objections previously made before the master. It is certainly true that some of the objections are so general as to amount to nothing by way of exceptions to the report. We agree with the Appellate Court in holding that neither the chancellor nor a court of review could, by such general objections, be required to go over the entire record and restate the account. Some of these exceptions, however, are at least substantially good. We think this is true of those filed by either party questioning the finding of the master as to the value of the good will, complainant objecting that the amount

found is too small, and defendants insisting that it is too large. The same may perhaps be said of the one filed by complainant *nunc pro tunc*, to the effect that the master wrongly found that there was a loss in the business of said firm on the 29th of July, 1885, instead of finding that there was a profit. Whatever of objection can be urged against this, goes rather to form than substance. They were treated by all parties, both before the master in chancery and in the circuit court, as sufficient.

While we adhere strictly to all that we said in the cases cited in the opinion of the Appellate Court, as to the proper practice in such cases as this, we can not consent to a reversal of the decree of the circuit court for mere insufficiency in the form of exceptions. Chapter 7 of the Revised Statutes provides, that "no judgment shall be reversed for any mispleading or insufficient pleading, or for any other default or negligence * * * by which neither party shall have been prejudiced."

Counsel for appellee say, the item of $5000 found in favor of their client is not reported by the master as the value of good will alone, but that he included in that amount other interests, which they denominate,—first, the advantage of the premises; second, such other matters as resulted from his share of the efforts which created the business. They insist, therefore, that the exception to the allowance of good will does not reach all of this amount, and for that reason should have been overruled. If these items are recoverable at all, it must be because they enter into and constitute a part of the good will of the firm business, and the master so treated them. In his report he says: "In compliance with the directions of the order of reference, to ascertain the value of the interest of the complainant, Edward C. Huling, in the firm assets *and in the good will of said business* at the date of the dissolution of the said firm, I have ascertained the same to be as follows, namely: * * * "The value of his other interests in said business, *or the good will thereof, is* $5000." In that part of his report, which is in the nature of an argument, he clearly

shows that he estimated the value of what he considered good will, at $5000.

The questions decided by the circuit court on these exceptions, as shown by the decree, were,—first, that there was no error in the master's report as to the condition of said firm on July 29, 1885; and second, that there was error in said report, in so far as it found that appellee had a valuable interest in the same as good will.

It is insisted by counsel for appellee, that the master's conclusion as to the state of the partnership accounts on July 29, 1885, is based on incompetent and insufficient evidence. He shows, in his report, that it is based upon a statement made by Simeon Farwell, sworn to by him as being made from the firm books, and as being a correct statement of the financial condition of the co-partnership at the date mentioned; also, that the books from which the statement was made were produced and in evidence before him. He further reports, that a Mr. Holbrook, who examined the firm books as an expert, appointed by the court prior to the reference to the master, also made a statement of the condition of said business up to the 1st of June, 1885, which, in view of the sales for June and to the 29th of July, with the estimated expenses for that time, would differ very widely from that made by Farwell, and show a large profit, instead of loss, and that said Holbrook testified before him that his said statement was substantially correct. But he also reports, that neither Holbrook, nor any one else on behalf of complainant, offered figures to show the condition of the business at the date of the dissolution of the firm, the only evidence on that subject produced before him being the books of the firm, and said statements of account prepared by Simeon Farwell therefrom. He also shows by his report that he made his statement of the account to date of dissolution as nearly accurate as he could from the evidence before him. Farwell and Holbrook each swears that the statement of the other is incorrect, and we see no objection to the competency of their

evidence.   The master might accept or reject the evidence of
these witnesses, as thought proper.   He had the books before
him, by which he could test the correctness of their respective
statements.   Complainant had the same access to the books
that defendants had.   If he objected to Farwell's statement
as being incorrect, he had a perfect right to have Mr. Holbrook,
or any other accountant, make a correct one, showing just how
the firm stood at the date of its dissolution.   The court, at com-
plainant's request, had ordered the master to state the account.
Certain evidence was introduced by defendants.   Complainant
chose to submit the cause without offering better evidence.
Under these circumstances, we think the master was justifiable
in accepting the statement of Simeon Farwell as true.   This
statement includes the amounts allowed by the master to com-
plainant for interest on his capital in the firm, and the value
of his interest in the unexpired lease held by the firm.   There
is nothing in the evidence from which we can question the
correctness of the master's findings as to these items.

After a painstaking examination of the evidence preserved
in this record, we are unable to see how the account between
these parties, to July 29, 1885, could have been differently
stated than as reported by the master, aside from the item of
good will.

As to the value of appellee's interest in the good will of the
firm business, the clear preponderance of the evidence is, that
there was, legally speaking, no good will attaching to the busi-
ness at dissolution.   In fact, the master does not pretend to ·
base his report as to that item, in his account, upon testimony
of its value, but he argues himself into the conclusion that it
is of some value, mainly because, as he says, good business
men are willing to continue the business.   He says:   "Mr.
Huling retires from the firm; he leaves behind him the ad-
vantage of the premises, of name, and of such other matters
as resulted from his share of the efforts which created the
business."   But what is the value of these advantages?   The

business had been conducted less than one year. There is nothing to show that any good will attached to the place. The report itself shows that the firm lost heavily in the short time it did business. No evidence is referred to as tending to show good will to the name of the firm. In short, if there is anything in this record, except the conclusion of the master, tending to show that any firm, at an entirely different locality, under an entirely different name, could not have commenced and carried on the same business with as much success as could be by the successors of this firm at the old stand, we have been unable to discover it. The mere fact that the other members of the firm may consider the business worth continuing, does not tend to prove that a good will had attached to it at the time of the dissolution. We do not deem it important in this case to notice the several definitions of the term "good will" found in the books. The most comprehensive, perhaps, is that given by Bates in his work on the Law of Partnership, (sec. 957,) quoted by the master in his report, viz.: "Every possible advantage acquired by a firm in carrying on its business, whether connected with premises or name or other matter." The trouble with the master's report, as we have said, is that the evidence wholly fails to show what, if anything, those advantages, in this case, are worth,—in fact, tends strongly to show they are worth nothing. We can discover no more reason, from this evidence, for fixing this item at $5000 than at $40,000, or any other sum.

We think the decree of the circuit court is in conformity with the evidence in the case, and should have been affirmed by the Appellate Court. The judgment of the Appellate Court will be reversed, and the decree of the circuit court affirmed.

*Judgment reversed.*