(78 App. Div. 449.)

## SLATER et al. v. SLATER.

(Supreme Court, Appellate Division, First Department.　January 23, 1903.)

1. PARTNERSHIP—PARTNERSHIP NAME—USE BY SURVIVING PARTNER.

Laws 1897, c. 420, § 20, subd. 1, providing that the use of a partnership name may be continued where the business "continues to be conducted by some or any of the partners therein, their assignees or appointees," does not authorize the continuance of a partnership name by a surviving partner unless he has purchased the partnership good will.

2. SAME—PARTNERSHIP NAME CONTAINING NAME OF DECEASED PARTNER.

Pen. Code, § 363, prohibits absolutely the use of a partnership name containing the name of any one not actually interested as a partner, but excepting those cases where the statute authorizes the continuance of a partnership name by a "successor, survivor, or other person"; section 363b, being an amendment, provides for the registering of the names of those carrying on a business under any name other than that of the individuals so conducting the business; and section 4, c. 400, Laws 1854, provides that the act shall not be construed to prevent the lawful use of a partnership name, provided it includes the real name of at least one of the persons conducting the business. *Held*, that section 363b was in addition to section 363, rather than in derogation thereof, and that therefore the continuance of the use of a firm name containing the name of a deceased partner was absolutely prohibited, unless otherwise authorized by statute.

3. SAME—SETTLEMENT OF ESTATE—SALE OF USE OF NAME.

Laws 1897, c. 420, § 20, subd. 1, providing that the use of a partnership name may be continued where the business "continues to be conducted by some or any of the partners, their assignees or appointees," does not authorize a decree in the settlement of the estate of a deceased partner for a sale of the right to conduct business under the firm name, which consists of the names of the deceased and surviving partners; the surviving partner objecting thereto.

4. SAME—GOOD WILL.

The purchase of the good will of a business of a partnership dissolved by death gives the right to use the name of the partnership for the purpose of advertising as its successor.

5. SAME—WINDING UP AFFAIRS—COMPENSATION OF SURVIVING PARTNER.

A surviving partner is not entitled to compensation for his services in winding up the affairs of the firm.

6. RECEIVERS—COMPENSATION.

Code Civ. Proc. § 3320, providing that the compensation of a receiver shall be discretionary with the court appointing him, applies to a receiver appointed to wind up the affairs of a partnership.

7. SAME—APPEAL—RECORD.

Where the facts concerning the administration of a receiver are not contained in the record, the appellate division cannot review a refusal to grant him compensation.

Appeal from special term, New York county.

Action by Cecelia L. Slater and another, as executrix and executor of John Slater, deceased, against James Slater individually and as executor of John Slater, deceased, and others.　From an interlocutory judgment, both plaintiffs and defendant James Slater appeal.　Modified and affirmed.

Argued before VAN BRUNT, P. J., and HATCH, O'BRIEN, INGRAHAM, and LAUGHLIN, JJ.

¶ 5. See Partnership, vol. 38, Cent. Dig. § 550.

John A. Garver, for plaintiffs.
James W. Hawes, for defendant James Slater.

LAUGHLIN, J.   The copartnership firm of J. & J. Slater, composed of John and James Slater, was formed in 1859 for the purpose of manufacturing and selling boots and shoes.   The business was established that year in the city of New York, and continued by the original partners until the 23d day of June, 1901, when John, the senior partner, died.   Since that time the business has been continued by James, as the surviving partner, at the same place, with the same employés and in the same manner as before, but, as the trial court has found, with a view to closing out its affairs as a going concern for the benefit of himself and the estate of his deceased brother, whose interests are equal.   The surviving partner, however, asserted an exclusive right to continue the business and the use of the firm name; and, with that end in view, he entered into an agreement on the 4th day of October, 1901, with his nephew, the defendant John Slater, and with the defendant James S. Coyte, for the formation of a partnership as soon as the affairs of the old firm are settled, "to carry on the manufacture and sale of boots and shoes and merchandise, such copartnership to terminate on the 1st day of May, 1907"; and on said 4th day of October, 1901, they filed a certificate in the form provided by section 21 of the partnership law (chapter 420, Laws 1897), declaring their intention to continue business under said firm name, and caused a copy of such certificate to be published as therein provided.   This action was commenced on the 23d day of December, 1901, by the plaintiffs, as executrix and executor, respectively, of the deceased partner.   The surviving partner was also one of the executors of the deceased partner, and he is sued both individually and as such executor.   It is alleged in the complaint, among other things, that the surviving partner is proceeding in disregard of his duties and in violation of the rights of the representatives of the deceased partner, and is asserting an exclusive individual ownership of the copartnership name, and contends that the good will, apart from the name, is valueless.   The appointment of a receiver and an accounting are demanded.   The plaintiffs applied for the appointment of a receiver, and the court appointed the surviving partner, who qualified and entered upon the discharge of his duties.   Upon the trial of the issues a decision was filed authorizing an interlocutory judgment, decreeing, among other things, a sale of the entire property and assets of the firm as a going concern, including the store and basement of No. 1121 Broadway, and the store No. 27 West Twenty-Fifth street, being the premises occupied and used by the firm as its place of business during the last four years, which leases run until May 1, 1907, and including the lasts, patterns, bills receivable, entire stock on hand, and good will of the business, but not the right to use the firm name, which the court decided was not a firm asset nor part of the good will of the business of the firm, and that it passed to, and became the absolute property of, the surviving partner.   The plaintiffs appeal from that part of the interlocutory judgment which

directs that the referee therein appointed should not include in the sale the right to continue the use of the firm name of J. & J. Slater, and also from that part relating to the advertisement of the terms of the sale. The court disallowed the claim of James Slater for compensation for continuing the business as surviving partner and as receiver, and from this part of the judgment he appeals.

Partners are joint tenants of the stock in trade, but his attempt to become the successor to the business and to succeed to the exclusive use of the firm name, under the statute, was premature. Section 20 of the partnership law (chapter 420, Laws 1897) provides as follows:

"When Partnership or Business Name may be Continued. The use of a partnership or business name may be continued in either of the following cases: (1) Where the business of any firm or partnership in this state, having business relations with foreign countries, or which has transacted business in this state for not less than three years, continues to be conducted by some or any of the partners, their assignees or appointees; (2) where a majority of the members, general or special, of a general or limited partnership formed under the laws of this state, or of the stockholders of any corporation, domestic or foreign, which may theretofore have carried on its business within this state, and where said general or limited partnership or corporation has discontinued or shall be about to discontinue its business within the state, and where a majority of the partners, general or special, in either of such last mentioned copartnerships or of the survivors thereof shall be members of the new limited copartnership, or where a majority of the members of such copartnership theretofore existing or of the surviving members thereof or of the stockholders of such corporation shall consent in writing to the use of such firm or corporate name by the new limited partnership; or (3) where any resident of this state dies, who at the time of his death and for at least five years immediately prior thereto, conducted and carried on in his sole name, any business in this state, or who at the time of his death, so conducted and carried any business having relation with other states or foreign countries, the right to use the name of such person, for the purpose of continuing and carrying on such business, shall survive and pass and be disposed of and accounted for as part of the personal estate of such deceased person, and such business may be continued and carried on under such name by any person who comes into the legal possession thereof."

The right of the survivor to use the firm name in the case at bar depends upon subdivision 1 of said section 20, which only authorizes such continued use where "the business" of the firm "continues to be conducted by some or any of the partners, their assignees or appointees." Section 21 merely prescribes how the right may be secured and preserved. It is manifest that the legislature intended to limit the right to the use of the firm name "to some or any of the partners, their assignees or appointees," who continue to conduct the business theretofore carried on by the firm. It would therefore seem clear that the statute fairly requires, as a basis for the use of the firm name, that the right to continue the firm business must be first lawfully required. This history of legislation is not inconsistent with this construction. The first statute enacted on this subject was chapter 281 of the Laws of 1833, which prohibited the transaction of business in the name of a partner not interested in the firm, and provided that, where the designation "and Company" or "and Co." was used, it should represent an actual partner or partners, and made a violation thereof a misdemeanor. This was repealed by chapter 593 of the

Laws of 1886, but it had been superseded by section 363 of the Penal Code (chapter 676, Laws 1881), which was to the same effect, and further provided that it should be unlawful to use the name as a partner of one not interested in a firm. By chapter 400 of the Laws of 1854 it was provided that if any copartnership shall have used or should thereafter use a copartnership name, "and the business conducted by it shall be continued by some or any of the partners, their assignees or appointees, it shall be lawful to continue the use of such firm name: provided that upon every change of the persons continuing such use" a certificate should be filed and notice published as therein provided; but by the fourth section the act was limited to firms or corporations having business relations with foreign countries. This statute was amended by chapter 144 of the Laws of 1863 by extending its application "to all copartnerships in this state who have transacted business therein for a period of five years or upwards," and to certain limited copartnerships; and the period of five years was reduced to three in 1888 (chapter 142, Laws 1888). These statutes, so far as material here, were re-enacted in and upheld by the partnership law (chapter 420, Laws 1897). This comprises the history of legislation on the subject, so far as applicable to the continuance of an unlimited copartnership firm name such as that under consideration. In 1900 the legislature added section 363b to the Penal Code (chapter 216, Laws 1900). The provisions of this new section should, we think, be construed with section 363 of the Penal Code, as supplemental, and not as repugnant thereto. Manifestly, it was not the intention of the legislature, in adding this new section, to modify the existing penal laws, nor to grant any permission for the continuance of the use of the firm names. The original section inhibits the use of certain copartnership names unless authorized by statute, and the other supplements it by inhibiting the use of any other assumed trade names except on the conditions therein prescribed. It thus appears that the right of each partner on dissolution, or of the surviving partner on dissolution by death, to use a copartnership name of the kind inhibited, has been destroyed, except as authorized by statute. The firm names inhibited are associated with persons, and the public are liable to be misled, while the firm names used as tradenames are not necessarily so, and they acquire the nature of tradenames, which become assets of the firm. See Chas. S. Higgins Co. v. Higgins Soap Co., 144 N. Y. 462, 39 N. E. 490, 27 L. R. A. 42, 43 Am. St. Rep. 769; Caswell v. Hazard, 121 N. Y. 484, 24 N. E. 707, 18 Am. St. Rep. 833.

It is therefore clear that, before any one is permitted to continue the use of the firm name, he must first acquire the business by purchase, voluntary or otherwise. The business is a firm asset, and if, as here, the parties do not agree upon a disposition of it, the court may decree its sale for the benefit of the creditors, if any there be, and all those having an interest in the firm. The business being a firm asset, the firm, if those interested do not agree otherwise, is entitled to all it can obtain therefor on a sale thereof, and the surviving partner has no right to continue the business in the old firm name for

his own benefit (Lindl. Partn. 444); and he can acquire no right to the use of the firm name under the statute, except he be the purchaser on the sale. The defendant James Slater, by not appealing from that part of the judgment, concedes that the good will is a firm asset, which may be sold; and such it unquestionably is. Pollock, Partn. art. 39; Allan, Good Will, 81; 2 Bates, Partn. § 672.

The decree of the court and the interlocutory judgment, however, excludes from the good will the firm name, and adjudges that it belongs exclusively to the surviving partner. It is manifestly impracticable to thus separate the firm name from the good will. It is evident that the good will is of little value disconnected entirely from the firm name, and with the exclusive right to use the firm name outstanding in another. It follows from what we have already stated that the decision of the trial court is erroneous in so far as it adjudges that the surviving partner is entitled to the exclusive use of the firm name, regardless of whether or not he purchases and continues the business.

The important question still remains to be determined as to how far, if at all, the right to the exclusive use of the firm name goes to any purchaser of the good will, even though he be not the surviving partner. It appears that for a period of more than 40 years this firm did a successful, profitable business, which increased very rapidly during the later years. The right exists to continue the business at the same place for many years, and this undoubtedly adds to the value of the good will. It needs no argument to show that it must have a valuable good will. It is evident that there may be a good will incident to the premises, where the right exists to continue business at a particular place specially adopted by favorable location; also as an incident to the personnel of the firm, where the right to use the firm name is acquired and authorized; also as an incident to the trade, where the right to continue the particular business is acquired; and also as an incident to both place and trade, as here, where the right to continue the particular business at the old stand exists. 14 Am. & Eng. Enc. Law (2d Ed.) p. 1085; People v. Roberts, 159 N. Y. 70, 53 N. E. 685, 45 L. R. A. 126. We have recently held, in Fisk v. Fisk (not yet officially reported) 79 N. Y. Supp. 37, that the purchase of the good will of a business included the right to the purchaser to hold himself out as the successor to the business of the old firm. It is difficult to define all of the elements embraced in the term "good will," but it is evident that the valuable elements of a good will are those which attract the customers. They are all—excluding from present consideration the right to continue the business in the firm name—included in the right to succeed to the business, and to carry it on openly as the successor to the old firm. Thynne v. Shove, 45 Ch. Div. 577; Burchell v. Wilde [1900] 1 Ch. 551; In re David [1899] 1 Ch. 384–386; Hegeman v. Hegeman, 8 Daly, 1; Knoedler v. Boussod (C. C.) 47 Fed. 465; Id., 5 C. C. A. 305, 55 Fed. 897, 20 L. R. A. 733; People v. Roberts, 159 N. Y. 81, 53 N. E. 685, 45 L. R. A. 126. Whether dependent upon person, trade, or place, the good will is a property right, which can be sold or

assigned (People v. Roberts, supra), and which, on dissolution, the court will, as Lindley says (Lindl. Partn. p. 433), "so far as is possible, having regard to the right of every partner to carry on business for himself, * * * interfere to protect and preserve."

The plaintiffs argue that the reputation of the firm for honest, considerate dealing, courteous treatment of its customers, skillful workmanship, good quality and style of its goods, has held and increased its trade, and that its customers rely with confidence upon what it offers for sale. Assuming these facts to be true,—of course, it will be for each intending purchaser to say how far he deems them true, and to what extent he is to be influenced thereby,—can there be any doubt that the purchaser of the business, whether he be the surviving partner or not, will be able to hold a large part of this trade if he may lawfully inform the public, by advertising or otherwise, that he, as the successor to this firm, will continue its business methods, and will continue to furnish to the trade the same high quality of stylish footwear, and will continue in his employ, so far as possible, the workmen and employés who have aided in making the business of his predecessors a success, and will in every way continue to deserve the confidence earned by them? It thus appears that this is a valuable right.

There is a dearth of authority on the question as to whether the right to use the firm name passes to the surviving partner at common law. No decision, other than those made at special term, has been cited, and we find none in this jurisdiction decisive of the question. Some of these special term decisions, among which is Fenn v. Bolles, 7 Abb. Prac. 202, hold that it becomes a firm asset; and others, among which is Mason v. Dawson (Sup.) 37 N. Y. Supp. 90, hold that the right passes to the surviving partner; and the rule was so stated in Caswell v. Hazard, supra, but the question was not directly involved. The absence of controlling precedents is doubtless owing to the fact that this question is generally regulated by the copartnership articles, and the right to continue the use of a firm name has become valuable of late years. The common-law rule seems to be—established in England by recent decisions—that it does not pass to the survivor, but is part of the good will, and a firm asset. Churton v. Douglas, 1 Johns. Eng. Ch. 174; Burchell v. Wilde, supra; In re David, supra. But the right of a purchaser of a business to use the firm name to the extent of holding himself out as its successor, and advertising the fact that he is the successor, seems well sustained by authority. Cases last cited, and Levy v. Walker, 10 Ch. Div. 436, 449; Banks v Gibson, 34 Bev. 566; Sebastian, Trade-Marks, 223, 337; 2 Lindl. Partn. (Am. Ed.) 444; Pars. Partn. (4th Ed.) 243, note; Meecham, Partn. § 86; Turner, Partnership Agreements, 65. Whatever the common law may have been, it was undoubtedly competent for the legislature to prohibit or regulate the continuance of the use of a firm name after dissolution. It was doubtless competent for it to authorize the use of the firm name by a surviving partner who acquires the good will and the business. The estate of the deceased partner could not become liable in such case, and is not prejudiced. Whether

the statute was designed to authorize a purchaser, other than a surviving partner, on dissolution by death, to continue the business in the firm name, need not be authoritatively decided; for, even if so, we think it should not be permitted in this case. The present rule seems to be, in England, that the purchaser of the good will is not entitled to use the style or name of the old firm, where that includes the name of a living person, or if the use of it would expose the owner of the name to liability (Burchell v. Wilde, supra); and the surviving partner does not become the owner of the firm name, but it passes to the purchaser, who may enjoin its use by the survivor (In re David, supra). The case at bar, relating as it does to an important branch of business law, should be considered and determined on its own special features. The firm has been dissolved by operation of law. Its assets are not being sold voluntarily, with all the members of the firm consenting to the terms of sale, but involuntarily, with the survivor objecting to a sale of the firm name. The firm name is neither artificial nor fictitious. It consists of the surname of both partners, with the initials "J. & J.," standing for John and James, prefixed. Does such a firm name form an essential, indispensable part of the good will? Is it so intimately connected with it that the executors of the deceased partner may insist upon a transfer of it to the purchaser; and may he be given the right to use it, not only without the consent, but against the protest, of the survivor, who claims the right to the use of his own name in the same line of business, and also the right to the use of the firm name in his intended partnership with his nephew and the other defendants? Manifestly, the rule must be the same whether the dissolution is by death, or other termination of the partnership. Would one partner, on a voluntary dissolution, have the right to insist upon the assignment of the firm name to a purchaser, where it embraced the other's surname and the initial of his Christian name? It is the duty of the court, in applying the principles of the common law in new or doubtful cases, to consider the consequences that may result from its decision, and whether the effect will be good or bad. Ramon, Leg. Judgm. 54, 234. If the court should decree the sale of the old firm name, and construe the statute as authorizing the purchaser to continue the business in that name, then he might carry on the business solely in that name, without making any use of his own, and without disclosing the fact that he was a purchaser. Thus such of the public as are not aware of the death of John Slater would be led to believe that he is still living, and those who are not aware that James has severed his connection with the firm might be led to continue as customers upon the faith of his connection with the firm, to his prejudice as the proprietor of a separate, lawful, similar business. Furthermore, such purchaser might obtain credit on the use of the name of James Slater in the firm, and thus James might be exposed to liability to innocent creditors for having suffered the use of his name; and it would be the duty of a court of equity to enjoin such use for his protection. Burchell v. Wilde, supra; Walton v. Ashton [1902] 2 Ch. 293; Levy v. Walker, 10 Ch. Div. 443, per Hall, V. C.; Adams v. Adams, 7 Abb. N. C. 292. By what authority

may the court assign the right to use the name of James against his protest? John, living, would have had no right thus to assign the use of his partner's name without the latter's consent. How do his executors or how does the court acquire any greater right? Without his consent, would the purchaser be an assignee of this right under the statute, and not within the prohibition of section 363 of the Penal Code? It is apparent that grave questions, if not serious mischief, might arise from a sale of the firm name without the consent of James, and the right is, at most, extremely doubtful. Consequently, under the rule stated, a sale of the firm name, as distinguished from the right of the purchaser to advertise and hold himself out as the successor to the firm and its business, should not be decreed. Inasmuch, however, as the surviving partner will retain no right or interest in the firm assets or name, and can acquire none unless he be the purchaser, the interlocutory judgment must be modified by striking therefrom the provision which adjudicates that he has the exclusive right to use the firm name, and by providing that the good will which is to be sold includes the exclusive right of the purchaser to hold himself out, by advertising and otherwise, as the successor to the firm of J. & J. Slater, and to its business, but not to continue the business in the old firm name unless he be the surviving partner. Further than this, the right of James to engage in the same line of business, either alone or with others, cannot now be adjudicated. If any question should arise between him and the purchaser, it will be determined on the principles of law administered by courts of. equity relating to unfair competition in trade, and the court will not be powerless to fully protect the purchaser in the enjoyment of the property and property rights acquired by him through the sale, wherein both the surviving partner and the representatives of the deceased partner are vendors. See Hegeman v. Hegeman, supra; Hildreth v. McCaul, 70 App. Div. 162, 74 N. Y. Supp. 1072; Chas. S. Higgins Co. v. Higgins Soap Co., supra.

The surviving partner was not entitled to compensation for his services in winding up the affairs of the firm. Burgess v. Badger, 82 Hun, 488, 31 N. Y. Supp. 614. As receiver, his compensation was discretionary with the court. Code Civ. Proc. § 3320. The record does not present the facts concerning his administration as receiver, and consequently the disallowing of commissions or compensation cannot be reviewed. However, it appears that he erroneously asserted rights inconsistent with the rights of the representatives of the deceased partner, and this necessitated the receivership.

It follows that the interlocutory judgment should be modified as herein indicated, and, as so modified, affirmed, with costs to each party payable by the receiver. All concur; INGRAHAM, J., in result.