## Brown v. Kaplan.

*Receiver's sale—Good-will—Right to use of name.*

1. The purchaser of the good-will of a going partnership, who also buys the real estate where the business has been conducted, acquires the right to use the firm name at that place.

2. Where an order of sale was granted to a receiver, directing him to sell real estate, one piece of which was where a copartnership had carried on its business of buying and selling shoes for thirteen years, and the order of sale also included a direction to sell the fixtures, right to use the name of K. S. Co., good-will, etc., and a rule was taken to show cause why "the right to use the name of Kaplan Shoe Company" should not be stricken from the order of sale: *Held*, that the term "good-will" included the right to use the firm name, K. S. Co., provided the purchaser bought the real estate where the business had been carried on, whether the purchase was by a partner or by a stranger, and the rule should be discharged.

Application to modify an order of sale granted to a receiver. C. P. Northampton Co., Sept. T., 1922, No. 7, in Equity.

*E. J. & J. W. Fox*, for complainant.

*Smith, Paff & Laub* and *I. Krohn*, for defendant.

STEWART, P. J.—An order of sale on the petition of the receiver issued, directing him to sell certain real estate of the Kaplan Shoe Company. One of the pieces was Nos. 208 and 210 Northampton Street, where this copartnership had carried on their business of buying and selling shoes for the past thirteen years. In the bill it was alleged that that business had been successful, and during certain years "extremely profitable." The bill was filed because disputes and differences had arisen between the partners, and because of the alleged hostility and misconduct of one of the parties in refusing to make settlement with the other. In the order of sale we directed the receiver to sell the stock, "fixtures, right to use the name of Kaplan Shoe Company and good-will of the retail shoe business as formerly conducted by the parties to this proceeding under the firm name of Kaplan Shoe Company." Subsequently a rule was issued to show cause why "the right to use the name of Kaplan Shoe Company" should not be stricken from the order of sale. The contention of the learned counsel for the defendant is that the name of a copartnership cannot be sold by the receiver. Argument was had, and counsel on each side have cited to us a large number of authorities from other states which seem to be totally irreconcilable. Little reference, on the argument, was made to our Pennsylvania authorities, although it seems to us that while the exact question has not been decided, yet they assist materially in solving the present question. In the first place, the rule to strike off is not directed against the sale of the "good-will." It is only against the sale of the name. If the rule were made absolute, would not good-will include the right to use the name? In 4 Words and Phrases, 3128 and 3129, we find the following: " 'Good-will,' as defined by Lord Eldon, means nothing more than the probability that the old customers will resort to the old place. . . . It is difficult to define all of the elements embraced in the term 'good-will,' but it is evident that the valuable elements of a good-will are those which attract the customers. They are all—excluding from the present considerations the right to continue the business in the firm name—included in the right to succeed to the business and to carry it on openly as the successor to the old firm: Slater *v.* Slater, 80 N. Y. Supp. 363, 367, 78 App. Div. 449 (citing Thynne *v.* Shove, 45 Ch. Div. 577; Burchell *v.* Wilde, 1 Ch. Div. 551; Knoedler *v.* Boussod (U. S.), 47 Fed. Repr. 465; People *v.* Roberts, 159 N. Y. 70, 81, 53 N. E. Repr. 685, 45 L. R. A. 126). . . . The good-will of a partnership may be

defined as every possible advantage acquired by the firm in carrying on its business, whether connected with premises, name or other matter: Farwell v. Huling, 132 Ill. 112, 119, 23 N. E. Repr. 438. No good-will can exist except in cases of commercial or trade partnerships. None exists in a partnership engaged in the business of buying and selling grain and produce on commission, in the absence of a special contract: Douthart v. Logan, 86 Ill. App. 294, 309, 310." It is true that the same book contains authorities that hold the other way, but, after examining them and the two following cases, Moore v. Rawson et al., 199 Mass. Rep. 493, where it was held, "The purchaser of the good-will of a partnership sold under a judicial decree acquires the right to use the firm name for the purpose of designating the business carried on by him as a continuation of that done by the old firm; . . . each member of the old firm has the right to use his own name in the business, either alone or with the names of others who are associated with him, but only the purchaser lawfully can use the firm name as an indication that his business is a continuation of that of the old firm," and Twin City Brief Printing Co. v. Review Publishing Co. et al., 166 N. W. Repr. 413, where it was held, "The name of a partnership is an essential element of the partnership enterprise, an asset thereof, and passes with a sale of the firm business and good-will," we are of the opinion that the sale of the good-will would include the name where the circumstances are as in the present case. No general rule can be laid down, but each case must depend upon its own facts. In Slater et al. v. Slater, 175 N. Y. Rep. 143, it was held: "Where a sale of the good-will and assets of a copartnership has been ordered, in an action brought by the executrix of a deceased partner against a surviving partner for an accounting and a sale and distribution of the firm property, the right to continue the use of the firm name, under which the firm has done business for many years, is a firm asset which does not inure to the benefit of the surviving partner alone, but is subject to sale with the other firm property without condition, restriction or limitation upon the purchaser, and the estate of the deceased partner is entitled to share in the benefits thereof in the same manner that it is entitled to share in the distribution of the other firm property. The purchaser at such sale, whether the surviving partner or otherwise, acquires the right to continue the business under the firm name upon complying with the provisions of sections 20 and 21 of the Partnership Law (Laws, 1897, ch. 420). Slater v. Slater, 78 App. Div. 449, modified." In Snyder Manuf. Co. v. Snyder et al., 31 L. R. A. 657, it was held: "Upon the dissolution of a trading copartnership, its assets, including the good-will of the business, may be sold as a whole, either by the partners directly or through a receiver, under an order of the court in a case to which they are parties; and a purchaser thereof, under either method of sale, is entitled to continue the business as the successor of the firm and make use of the firm name for that purpose." In Brass and Iron Works v. Payne, 33 N. E. Repr. 88, it was held: "The good-will of a partnership is a part of the property of the firm; and where a partnership is dissolved, one of the partners transferring to the others all his interest in the firm business and assets with the understanding that they are to succeed to the business of the old firm, such sale carries with it the seller's interest in the good-will. Of this good-will is the firm name; and where the contract of sale reserves to the retiring partner no rights with respect to the firm name, he cannot lawfully use it in a business of a like kind, carried on by him in the vicinity subsequent to such dissolution." This last case would, perhaps, not be held as controlling in all its features in Pennsylvania, but, so far as discussion on the subject of the name is concerned, it is applicable. The leading

3 D. & C.

authority that was cited by the learned counsel for the rule is Read v. Mackay et al., 95 N. Y. Supp. 935, where it was held: "While a firm name may in some cases be deemed a part of the good-will of the business, it is not of itself necessarily so, and cannot be in cases of businesses which depend on the personal attributes of the partners engaged therein, such as professional partnerships or banking and brokerage partnerships, in which the name has become a symbol denoting the personal integrity and business qualities of the partners." That was the case of the name of bankers in New York, Vermilye & Company. The name had been carried out by successors of the founder of the business. Upon the conclusion of the partnership, a controversy arose as to the disposition of the firm name, "Vermilye & Company." The court said: "Is this firm name transferable to a purchaser promiscuously selected, and should a court of equity extend its aid to effect such a transfer? These questions must for obvious reasons have a controlling effect upon the plaintiff's main prayer for relief. If answered affirmatively, would the transfer not afford an effectual means of deceit? A banker of established reputation would have little, if any, need of another's name. Is it not likely, therefore, that the highest bidder would be one most in need of it and least entitled to wear it? Courts of equity are constituted to dispense justice upon ethical principles; hence, their repugnance to the exercise of authority discordant with the dictates of a sound morality and which may become a means of deceit. What suggestion of morality, intuitive or inductive, supports the claim that one person should be permitted by purchase to assume the good repute of others? I say good repute, for in that only is the value of a firm name to be found which has remained personal to the members of the firm collectively." That quotation distinguishes the case from the present case and makes the authority an exception to the general rule. In Pennsylvania, in the early case of Holden's Admin'rs v. McMakin, 1 Parsons, 270, it was held: "The good-will of a newspaper is partnership property, and when one of the partners dies, it does not survive to the surviving partner. . . . In ordering a sale of partnership property, a court will direct all the property to be sold, that which of a tangible or even a speculative value, such as leasehold property, the subscription list of a newspaper and the good-will of the partnership, so that its *value will be felt* and appreciated by all parties interested in the concern." In Elliot's Appeal, 60 Pa. 161, it was held: "The good-will of an inn is local, and does not exist independently of the house in which it is kept. A husband kept tavern in a house which belonged to his wife; upon his death she became his administratrix and continued to keep the tavern, and subsequently sold the good-will. Held, that the price of the good-will was not assets of his estate." In Hall's Appeal, 60 Pa. 458, a bill in equity was filed to restrain the defendant from carrying on the business of an undertaker. He had sold the good-will of the business to the plaintiff, and afterwards started in business for himself, and, *inter alia*, advertised as follows: "J. M. Hall, general furnishing undertaker, late of No. 1313 Vine Street, has removed to 1539 Vine Street, where he will continue his former business. Strict personal attention at all hours." The Supreme Court said: "He sold the good-will of his business to the plaintiff for a valuable consideration, and good faith requires that he should do nothing which directly tends to deprive him of its benefits and advantages. . . . It is clear that he had no right to hold himself out as continuing the business which he sold to the plaintiff, or as carrying on his former business at another place to which he has removed: Hogg v. Kirby, 8 Ves. Ch. Rep. 214; Churton v. Douglas, 1 John. Eng. Ch. Rep. 174." In Musselman & Clarkson's Appeal, 62 Pa. 81, the syllabus is: "A banking firm dissolved and appointed a partner

to liquidate; on the dissolution, he commenced banking in the firm house on his own account under the firm name, and also settled the firm business there. Held, that, under the circumstances, he was not chargeable with the value of the good-will. It seems 'good-will' did not exist independently of the property in which the business was carried on. 'Good-will' is property in some circumstances. What constitutes 'good-will,' considered in this case." Mr. Chief Justice Thompson discusses the subject at some length, and says conclusively, first, that good-will is only connected with real estate, and, secondly, that it does not exist where the partnership runs out by its own terms. Such a case is not like the present case, where the dissolution is the act of the court, and where one of the assets is the firm business as it has been built up for thirteen years, and where both of the parties have conducted it under the name of the Kaplan Shoe Company. The case of Thackray's Appeal, 75 Pa. 132, illustrates the principle that the good-will is to be connected with the real estate. White v. Trowbridge, 216 Pa. 11, was a bill in equity to restrain the defendant, who had sold his interest in a partnership, together with the good-will, to his copartners, from carrying on the same business and from using his own name in the business, although it was a part of the old firm's name. It involved both the use of the name and the use of a trade-mark. The Supreme Court approved the following from the findings of the lower court: "We think the learned judge of the court below was entirely correct in his statement of the third conclusion of law, in which he says: 'The defendant is not deprived of the right to use his own name in connection with the conduct of his business simply from the fact that his surname is a portion of the trade-mark used by the copartnership of which he was formerly a member and whose business has been continued by plaintiffs.' And in the further comment made by him in overruling the exception to this finding, as follows: 'He has no right to use said name for the purpose of misleading the public or to induce persons to deal with him in the belief that they are dealing with or acquiring the product of the old firm or its successors in business. He also has the same right to hold himself out as the person who invented or originated the kind of wares he offers for sale, subject to the same limitations.' And, in this connection, it appears that the court below found as a fact, upon evidence which seems to us sufficient, that the defendant had not in this respect infringed upon or violated the rights of the plaintiffs." That case, again, is entirely unlike the present case. Kaufmann v. Kaufmann, 239 Pa. 42, contains a reaffirmation of the principle that "good-will, as an element of value or an asset of a partnership business, has no meaning except in connection with a continuing business," and a discussion that obviously must be confined to the peculiar facts of that case. The assignments of error are not given. The final decree of the court was assigned for error by both parties, but the lower court did not include certain valuable leaseholds as part of the good-will, but made them an item of separate charge. The Supreme Court held that, under the partnership agreement, the value of these leaseholds was included in the item "good-will." Marmaduke v. Brown, 254 Pa. 18, seems to be practically the same case as Musselman & Clarkson's Appeal, 62 Pa. 81. The lower court was affirmed by the Supreme Court in a *per curiam* opinion. The opinion of the lower court (see page 23) places the decision also on the ground of the peculiar circumstances of the case. From a review of the above authorities, it would seem, therefore, that a sale by the receiver of the good-will would, in this case, include the right to use the same name, "Kaplan Shoe Company," provided the purchaser bought the property Nos. 208 and 210 Northampton Street, whether the purchaser was one of the partners in interest or a stranger.

3 D. & C.

It would not give him the right to use the firm name at any other place, and the receiver should sell it in connection with that property. The mere fact that the order included the words "right to use the name of Kaplan Shoe Company" will not convey to any one the right to use it disconnected with that property. There was no occasion to include it in the order, neither is there any occasion to strike it out.

And now, Nov. 16, 1922, rule to show cause why the right to use the name of "Kaplan Shoe Company" should not be stricken from the order of sale discharged. From Henry D. Maxwell, Easton, Pa.