ROBERTS TELEPHONE & ELECTRIC CO. et al. v. FARMERS' & MERCHANTS' NAT. BANK OF ABILENE et al.

(Court of Civil Appeals of Texas. Texarkana. March 6, 1913. Rehearing Denied March 20, 1913.)

1. RECEIVERS (§ 55*)—APPOINTMENT—QUALIFICATIONS—CITIZENSHIP.

Where one appointed receiver of a corporation was not a citizen of the state, as required by Rev. Civ. St. 1911, art. 2130, he was not entitled to compensation out of the fund for services rendered and expenses incurred as receiver, nor could the court lawfully compensate him for such services and expenses by making an allowance therefor to his coreceiver.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 94, 400; Dec. Dig. § 55.*]

2. RECEIVERS (§ 55*) — QUALIFICATIONS — VALIDITY.

Where the cashier of a bank, who was also a stockholder, was appointed receiver of a corporation which was indebted to the bank, the cashier's disqualification by reason of such interest, as provided by Rev. Civ. St. 1911, art. 2129, did not render the appointment void, but voidable; and hence, while it did not invalidate his acts as receiver, he was not entitled by reason thereof to compensation for services out of the fund.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 94, 400; Dec. Dig. § 55.*]

3. RECEIVERS (§ 154*)—INSOLVENCY—ATTORNEYS—COMPENSATION.

Where receivers of a telephone company employed two firms of attorneys to represent them, and they acted as such for four years, during which time the telephone exchange was operated by the receivers, and business aggregating over $100,000 was transacted, an allowance to each firm of $1,500 for services was not excessive.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 279–282; Dec. Dig. § 154.*]

Appeal from District Court, Taylor County; T. L. Blanton, Judge.

Action by the Farmers' & Merchants' National Bank of Abilene and others against the Roberts Telephone & Electric Company and others. From a decree directing distribution of the assets of defendant telephone company in the hands of receivers, the corporation and others appeal. Reformed and affirmed.

The Roberts Telephone & Electric Company, a corporation under the laws of Texas, owned and operated a telephone exchange in Abilene. It was indebted to the Stromberg-Carlson Telephone Manufacturing Company, a corporation under the laws of New York, in the sum of $22,696.34, to the Farmers' & Merchants' National Bank of Abilene in the sum of $5,500, and to other parties. The Stromberg-Carlson Company claimed its debt was secured by a mortgage lien on the property of the Roberts Company. The bank claimed its debt was so secured also, and there was a controversy between it and the Stromberg-Carlson Company as to priority of their respective liens, each claiming its lien as to part of the Roberts Company's property was superior to the lien of the other. The Stromberg-Carlson Company by a suit in a federal court against the Roberts Company and the bank sought the appointment of a receiver for ·the Roberts Company, and a settlement of its controversy with the bank as to the superiority of their respective liens. In this suit the Stromberg-Carlson Company was represented by Hardwick & Hardwick as attorneys, and the bank was represented by Leggett & Kirby as attorneys. In accordance with an agreement between the Stromberg-Carlson Company and the bank, the suit in the federal court was dismissed, and one for the appointment of a receiver for the Roberts Company was commenced by the bank in the district court for Taylor county.

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

The Stromberg-Carlson Company was made a defendant in this suit, and in an answer filed joined the bank in its prayer for the appointment of a receiver. In this suit, as in the one in the federal court, the Stromberg-Carlson Company was represented by Hardwick & Hardwick as attorneys, and the bank by Leggett & Kirby as attorneys. By an order made October 10, 1907, the district court for Taylor county appointed Henry James, cashier of said bank, and Chas. F. Speed, traveling salesman for Texas, Louisiana, and Arkansas of said Stromberg-Carlson Company, receivers for said Roberts Company, and by an order made October 12, 1907, authorized them to employ an attorney or attorneys to represent them as such receivers. Thereupon they employed Hardwick & Hardwick and Leggett & Kirby as such attorneys. April 14, 1908, the court rendered judgment in favor of the bank against the Roberts Company for $6,554.16, and in favor of the Stromberg-Carlson Company for $26,526.34, and determined that the bank and the Stromberg-Carlson Company, respectively, had a lien on property of the Roberts Company to secure the payment of the sum adjudged in its favor. Those sums, respectively, besides interest, included 10 per cent. on the amount of the indebtedness as attorney's fees. It seems that claims against the Roberts Company other than those mentioned, aggregating the sum of $4,119.53, were paid by the receivers, and that an unsecured claim against said Roberts Company for $849.54 and 8 per cent. interest from September 26, 1908, in favor of the North Electric Company, had been allowed by the court, but had not been paid. The first report made by the receivers to the court was filed October 12, 1908. It showed that, when they took possession of the Roberts Company's property by virtue of the order appointing them receivers, they failed to make an itemized inventory thereof, and for that reason were then unable to make such an inventory. They submitted, however, a list of the property in their hands as receivers at the date of this report, and estimated the value of the property belonging to the Roberts Company at the time they were appointed receivers at $40,873.31. By an order made March 22, 1910, the receivers were authorized to sell the property in their hands as such. April 16, 1910, a sale thereof made by them to Lyman E. Klotz for $41,500 was approved by the court, and the receivers were directed to convey the property to Klotz "clear and free from any and all liens and incumbrances, save and except the assumption by said Lyman E. Klotz" of a debt of $1,500 against a portion of certain lots in Abilene forming a part of same. In this order the receivers were directed to retain $6,200 of the $41,500 to be paid by Klotz for the property, out of which to pay the expenses of the receivership, "including operat-

ing expenses, hire of employés, receivers' charges and attorney's fees, and all other expenses," and to prorate according to their respective claims and pay the remainder thereof to the Stromberg-Carlson Company and said bank. The receivers were further directed, if there was any of the $6,200 left after paying said expenses, to pay same over to said Stromberg-Carlson Company and said bank in proportion to their respective claims. The final report of the receivers was filed February 16, 1911; and October 7, 1911, they filed a "corrected and amended final report." From these reports it appeared, it seems, that before the sale of all the property then remaining to Klotz the receivers had realized on sales made by them of other property belonging to the Roberts Company about the sum of $6,253.88—making, with the proceeds of the sale to Klotz, the sum of $47,753.88 realized from sales of property belonging to the Roberts Company. It further appeared that they had expended for "construction" $12,849.59, had paid an account of interest accruing on the debts due the Stromberg-Carlson Company and the bank after they were appointed receivers about the sum of $5,000, had paid to one of themselves, Speed, on account of services and expenses as receiver $3,048.35, and to the other, James, on account of his services as receiver, $2,483.35, to Hardwick & Hardwick on account of services as attorneys for the receivers $1,500, and to Leggett & Kirby on account of services as attorneys for the receivers $1,500. The final report filed by the receivers showed they then had on hand funds belonging to the Roberts Company amounting to $78.95. August 28, 1911, Lyman E. Klotz, the purchaser of the property at the sale confirmed by the order of the court made April 16, 1910, intervened in the suit, and sought judgment against the receivers for a sum he alleged he had been compelled to pay on account of taxes chargeable against the property sold to him by the receivers. October 7, 1911, the Roberts Company, C. W. Roberts, who alleged he was a creditor of said Roberts Company, Fannie G. Roberts, who alleged she was a creditor of and also a stockholder in said Roberts Company, and Mary D. Roberts and Hugh Roberts, who alleged that they also were stockholders therein, intervened in the suit, and in their own behalf and in behalf of unsecured creditors of the Roberts Company named in their petition contested the final report made by the receivers, in so far, among other things, as it showed the sum of only $78.95 in their hands, and claimed credit for payments of sums to the receivers and their attorneys for services and expenses, for payments on account of interest which had accrued on the Stromberg-Carlson Company's and the bank's claims after the appointment of the receivers, and for payments made to said Stromberg-Carlson

Company and said bank to the extent of the sums expended out of the revenues arising from the operation of the telephone exchange in betterments of the property. It appears from findings made and filed by the court that Speed at the time he was appointed receiver was not, and never afterwards became, a citizen of Texas. On this finding the court concluded that the appointment of Speed as receiver "was void and of no binding force," and that he had wrongfully received of funds belonging to the Roberts Company, on account of fees and expenses as receiver, the sum of $3,048.35; but further found that Speed acted in good faith and performed services and incurred expenses worth $1,000, and that that sum should be paid to him by James out of the funds of the Roberts Company. The court further found that the services rendered by James as receiver and the services rendered by Hardwick & Hardwick and Leggett & Kirby as attorneys for the receivers reasonably were worth the sums, respectively, received by them. He further found: (1) That the property of the Roberts Company at the time the receivers were appointed was of the value of $40,000; (2) that said property consisted of a telephone exchange, which was operated by the receivers as directed by the court, and that while operating it the receivers received and paid out about $110,000, and "added to the plant material improvements in the way of betterments"; (3) that James had in his hands as receiver the sum of $2,170.44, after crediting him with $1,000 on account of Speed's services; (4) that there remained unpaid of the debt due the Stromberg-Carlson Company the sum of $974.65 and of the debt due the bank the sum of $440.39, which, after the payment of court costs unpaid, should be paid out of the funds in the hands of James as receiver before any part of said funds should be used to pay any other claim; and that, after said sums were fully paid, the balance, if any, remaining in the hands of the receiver should be applied (1) to the payment of Klotz's claim for reimbursement on account of taxes paid by him on the property sold to him by the receivers, (2) to the payment of the sum due the North Electric Company, and (3) to the payment of the sum of $882.30 due by the Roberts Company to C. W. Roberts on account of services rendered before receivers were appointed; (5) that the interveners had knowledge of the appointment of James and Speed as receivers, of their acting and performing services as such, of the employment of Hardwick & Hardwick and Leggett & Kirby as attorneys for said receivers, and of the performance by them of services as such, and made no complaint on account thereof until the March term, 1911, of the Taylor county district court; (6) that by an order made April 14, 1908, the court had directed all persons having claims against the Roberts Company to present same for allowance, and that the interveners, except the North Electric Company, had failed to present their respective claims within the time fixed by said order. By his judgment the court determined that the appointment of Speed as receiver was void, that Speed therefore was not entitled to be compensated for services performed and expenses incurred by him as receiver, and that James was entitled to recover of Speed the sum of $3,048.35 received by him on account of such services and expenses; but nevertheless made an allowance of $1,000 to James to be paid to Speed for services rendered by him. The judgment further determined that, after deducting the $1,000 allowed on account of Speed's services, James had on his hands as receiver $2,170.44, and directed him out of same to pay the balance of $974.65 due the Stromberg-Carlson Company and the balance of $440.39 due the bank, and then to pay the sum remaining, $755.44, into the registry of the court. The clerk of the court was directed when he received the $755.44, to deduct therefrom costs due him, then to pay to Klotz $187, and then pay to the North Electric Company the balance thereof remaining in his hands. The appeal is prosecuted by the Roberts Telephone & Electric Company, C. W. Roberts, Mrs. Mary D. Roberts, Miss Fannie G. Roberts, and Hugh Roberts.

Sayles, Sayles & Sayles, of Abilene, for appellants. Ben L. Cox, K. K. Legett, Harry Tom King, Hardwicke & Hardwicke and A. H. Kirby, all of Abilene, and Theodore Mack, of Ft. Worth, for appellees.

WILLSON, C. J. (after stating the facts as above). [1] It conclusively appeared that the services performed by Speed and the expense incurred by him were performed and incurred by him while acting as receiver, and not while acting as an employé of James as receiver. Having found, correctly, we think, that the appointment of Speed was void, because he was not at the time a citizen of this state (article 2130, R. S. 1911), and therefore that he was not entitled to compensation for services rendered and expense incurred as receiver, we think the court should not have undertaken indirectly to do what it had determined it could not directly do, to wit, compensate him for such services and expenses. Therefore we think the court erred when it allowed $1,000 to James for Speed. If such a course is permissible, then it is possible in every case to defeat the prohibition in the statute by appointing a citizen of this state to act as receiver with one who is not a citizen of the state. In this way an ineligible person could in any case be placed in charge as receiver, and his acts treated as valid because also the acts of the eligible receiver, by allowances to whom the ineligible receiver could be compensated.

Speed should have been left to look for compensation for his services and expenses to the party who procured his appointment as receiver. Sullivan v. Gage, 145 Cal. 759, 79 Pac. 541; 34 Cyc. 367.

[2] It appearing that James was the cashier and active manager of the bank and a stockholder therein at the time he was appointed and while he acted as receiver, it is insisted (1) that he therefore was ineligible, and consequently that his appointment was void; and (2) that, if his appointment was not void, the court erred in allowing him anything for his services as receiver. The statute declares that "no party, attorney, or any person interested in any way in an action for the appointment of a receiver shall be appointed receiver therein," but does not declare that an appointment of such a person in violation of its inhibition shall be void. Article 2129, R. S. 1911. Because he was a stockholder in the bank James was interested in the suit. Adams v. Minor, 121 Cal. 372, 53 Pac. 815. The act of the court in appointing him receiver was not therefore void, however. It was erroneous merely. Railway Co. v. Adams, 11 Tex. Civ. App. 198, 32 S. W. 734. But the reasons which justify a holding that the act of the court in appointing him was only voidable and not void, notwithstanding the inhibition of the statute, based as they are on a necessity for protecting rights of other parties dealing with him as receiver, do not apply when the question is as to whether he shall be allowed compensation for his services as receiver or not. He knew when he accepted the appointment as receiver that he was a stockholder in the bank, and therefore interested in the action for the appointment of a receiver. Charged as he was with knowledge of the prohibition in the statute, it must be assumed he knew he could not, on account of his interest, lawfully be appointed receiver. He might have declined the appointment. Choosing, instead, to accept it and act in face of the prohibition in the statute, we think he was not entitled to the compensation allowed him out of funds belonging to the Roberts Company. He, like Speed, should have been required to look to the party at whose instance he was appointed for compensation for his services. The prohibition in the statute should be observed, and perhaps there is no more effectual way to enforce its observance than to deny compensation to one whose appointment as receiver is procured in violation thereof.

[3] The court found as facts that Speed and James, acting as receivers and in conformity to authority conferred on them by his order, employed Hardwick & Hardwick and Leggett & Kirby to act as attorneys for them in their capacity as receivers, and that said Hardwick & Hardwick and Leggett & Kirby, in the discharge of duties assumed by them as such attorneys, performed services for the receivers as such. The court further found that the services so performed by said Hard-

wick & Hardwick and Leggett & Kirby were reasonably of the value of $3,000, and approved the claim of the receivers for an allowance of that sum on account of said services. The action of the court is attacked as erroneous, on the ground that the sum allowed is excessive. The parties mentioned acted as attorneys for the receivers from October, 1907, to October, 1911, or during four years. During all that time the telephone exchange belonging to the Roberts was being operated by the receivers, and it appears from the findings transacted business aggregating over $100,000. If Hardwick & Hardwick and Leggett & Kirby were entitled to claim anything of the receivers on account of their services, we cannot say the amount allowed them exceeded the sum they were entitled to. The question as to whether they were entitled to an allowance at all out of the funds belonging to the Roberts Company is not so presented by assignments as to require a determination of it by us.

The court found that on May 1, 1910, the balance remaining unpaid of the Stromberg-Carlson Company's claim amounted to $974.65, and in the judgment directed the receiver out of the funds in his hands to pay that sum to said Stromberg-Carlson Company. It is claimed the finding of the court as to the amount of the balance due that company was erroneous—that the balance due it at that time was the sum of $745.52 only. From the amended final report of the receivers it appeared that the balance due said Stromberg-Carlson Company was $974.65 as found by the court. The report in this respect was not excepted to. We have not been referred to, nor have we found in the record, testimony which we think will justify us in saying that the finding by the court as to the amount was erroneous.

From the findings we have made it appears that James as receiver has in his hands subject to the payment of debts of the Roberts Company and its receiver the sum of $5,653.75, instead of the sum of $2,170.40 as found by the court below. The indebtedness of the Roberts Company and its receiver established in the suit and shown to be unpaid, including costs of the suit, amounts to less than $3,000. It thus appearing that the Roberts Company is solvent, it is unnecessary to determine other questions made by the assignments. The judgment of the court below will be so reformed as to require James out of the sum of $5,653.75 belonging to the Roberts Company in his hands as receiver to pay to the Stromberg-Carlson Telephone Manufacturing Company the balance of $974.65 and interest thereon from October 13, 1911, at the rate of 6 per cent. per annum, amounting to $77.98, and aggregating the sum of $1,052.60 due it, and to the Farmers' & Merchants' National Bank of Abilene the balance of $440.39 and interest thereon from October 13, 1911, at the rate of 10 per cent. per annum, amounting to

$58.64, and aggregating the sum of $499.03 due it, and then to pay into the registry of the Taylor county district court the balance of $4,102.12 remaining of said sum of $5,653.75. Said judgment will be further so reformed as to require the clerk of said district court to pay out said sum of $4,102.12, when same reaches his hands, as follows: (1) To the clerk of said district court all unpaid costs of the suit, except the costs of this appeal. (2) To the clerk of this court the costs of this appeal. (3) To Lyman E. Klotz the sum of $187 and interest thereon from October 13, 1911, at the rate of 6 per cent. annum. (4) To the North Electric Company $849.54 and interest thereon from September 26, 1908, at the rate of 8 per cent. per annum. (5) To the Roberts Telephone & Electric Company the balance of said sum of $4,102.12 then remaining in his hands. As so reformed, the judgment will be affirmed.