JAMES v. ROBERTS TELEPHONE & ELECTRIC CO. et al. (No. 8–2571.)

(Commission of Appeals of Texas, Section B. Dec. 11, 1918.)

1. RECEIVERS ⬡=57 — OBJECTION TO APPOINTMENT—WAIVER.

The objection to the appointment of one who is cashier and stockholder in plaintiff bank as receiver of the defendant debtor corporation because disqualified for interest, where not seasonably urged, was waived.

2. RECEIVERS ⬡=196 — COMPENSATION — DISQUALIFICATION.

Where a bank cashier and stockholder, although disqualified for interest, was appointed receiver for a corporation, the appointment was not void or voidable under Rev. St. 1911, art. 2129, and, where he performed the receiver's duties in good faith without objection benefiting creditors and stockholders, he was entitled to compensation from the corporate funds.

3. RECEIVERS ⬡=48, 196 — QUALIFICATION —VALIDITY—COMPENSATION.

Rev. St. 1911, art. 2129, providing no person interested in an action shall be appointed receiver, and making such appointment voidable, is declaratory of the laws applied by courts of equity, and the compensation of such a receiver should be determined by the same equitable principles.

4. RECEIVERS ⬡=55 — EFFECT OF INVALID APPOINTMENT—COMPENSATION.

Although one appointed as a receiver was not a citizen of the state, as required by Rev. St. 1911, art. 2130, the court could lawfully without abuse of discretion compensate him for services and expenses by allowance to his coreceiver.

Error to Court of Civil Appeals, Sixth Supreme Judicial District.

Suit by the Farmers' & Merchants' National Bank of Abilene against the Roberts Telephone & Electric Company and others. From a judgment of the Court of Civil Appeals (155 S. W. 629) reforming and affirming a district court decree directing distribution of assets of the defendant Telephone Company in the hands of the receivers, the receiver, Henry James, brings error. Judgment of Court of Civil Appeals reversed, and the judgment of the trial court affirmed.

A. H. Kirby, S. P. Hardwicke, and K. K. Legett, all of Abilene, and Theodore Mack, of Ft. Worth, for plaintiff in error.

Sayles, Sayles & Sayles, of Abilene, for defendants in error.

McCLENDON, J. Two questions are presented for our determination: (1) Whether a receiver who is interested in the receivership can legally be allowed remuneration for his services; and (2) whether compensation can be lawfully allowed a receiver for services and expenses of a coreceiver who is a noncitizen of this state. Both questions are of first impression in our Supreme Court, and both have been answered in the negative by the Court of Civil Appeals. Roberts Telephone & Electric Co. v. Farmers' & Merchants' Nat. Bank of Abilene, 155 S. W. 629.

The following statement is necessary to a clear understanding of these issues:

### Statement of the Case.

The Roberts Telephone & Electric Company was indebted to Stromberg-Carlson Telephone Manufacturing Company in the sum of about $6,500, and to the Farmers' & Merchants' National Bank of Abilene in the sum of about $26,500, which sums were secured by liens upon all the property of the debtor company. These parties will be referred to respectively as the Telephone Company, the Stromberg Company, and the Bank. There was a controversy between the Bank and the Stromberg Company relative to the priority of their liens, and the latter instituted suit in the federal court at Abilene against the Bank and the Telephone Company and applied for a receiver. The Telephone Company was in straitened financial circumstances, and an understanding was reached among the three named companies, whereby the federal court suit was dismissed and a receivership was to be had in the state court. The Bank shortly thereafter, on October 10, 1907, filed this suit in the district court of Taylor county making the Telephone Company and the Stromberg Company parties defendant, setting out the facts concerning the controversy between itself and the Stromberg Company relative to their conflicting claims and praying for a receiver. On the same day the Stromberg Company answered, and joined in the prayer for a receiver, and the court immediately appointed as receivers Henry

James, who was cashier, and a large stockholder in the Bank, and Charles F. Speed, who at the time was an agent of the Stromberg Company and a citizen of Arkansas; the order of appointment reciting that all parties at interest were given notice. No objection was made to the receivership or to the appointment of either of the receivers, and the order of appointment is silent as to the residence or citizenship of either of the receivers. The receivers at once took charge of the property, which consisted of a local telephone exchange at Abilene and several toll lines, and adjudications were made upon the controversy between the Bank and the Stromberg Company and upon various interventions of creditors. Small portions of the property were from time to time sold by the receivers under orders of court, and finally, in April, 1910, the local exchange and all the property remaining in the hands of the receivers were sold for $43,000. It appears that Speed was a practical telephone man, and attended to the matter of rehabilitating and repairing and superintending the actual operation of the plant, as well as from time to time auditing the books. James attended to the financial matters of the company. He was experienced in these matters, but had no practical knowledge of the telephone business. Speed continued to be agent of the Stromberg Company until early in 1909, when his connection with that company ceased. Various efforts were made to sell the property, but no purchaser could be found; and Speed, after he had severed his connection with the Stromberg Company, finally succeeded in working up a sale, which under all the testimony was pronounced to be the best and most advantageous one that could be had. During their administration as receivers the plant was enlarged from about 450 telephones up to something over 900, and in a general way the plant was rehabilitated and put in better condition. Something over $100,000 passed through the hands of the receivers, and the record shows that their duties were faithfully performed. They operated the property from the 10th of October, 1907, until it was finally sold in April, 1910. Speed, from time to time, drew amounts as salary and commissions and was paid expenses which he incurred aggregating $3,048.35, of which amount $565 was expense and the balance compensation for his services. The receivers filed their final account on February 16, 1911. On October 7, 1911, the Telephone Company and certain stockholders and creditors filed objections to the account, among them objections to the allowance of any compensation to James and Speed by reason of the interest of James in the suit and by reason of Speed's interest and his disqualification as a nonresident of the state.

The trial court held that James was entitled to be paid for his services and allowed him $2,483.35, but disallowed all fees and expenses of Speed by reason both of his interest and noncitizenship, and ordered the repayment of these sums to receiver James. By a further order the court found that the services performed and expenses incurred by Speed were reasonably worth $1,000 to the estate, and allowed said sum to James.

## Opinion.

[1, 2] We will first consider the action of the Court of Civil Appeals in holding as a matter of law that James was not entitled to any compensation for his services as receiver because of his interest in the receivership.

Article 2129, Revised Statutes 1911, provides that no party, attorney, or person interested in any way in an action for the appointment of receiver shall be appointed receiver therein. That the appointment of a receiver who is interested in the receivership is not void, but voidable, is held in Railway v. Adams, 11 Tex. Civ. App. 198, 32 S. W. 733.

Objection to the appointment of James, not being seasonably urged, was waived. 34 Cyc. 149. The Court of Civil Appeals, while recognizing this doctrine, holds, however, that:

"The prohibition in the statute should be observed, and perhaps there is no more effectual way to enforce its observance than to deny compensation to one whose appointment as receiver is procured in violation thereof."

The effect of this holding would be to penalize one who, in good faith and without objection, has performed all the duties of receiver, and who, but for the statute, might be held to be entitled to compensation irrespective of his interest in the subject-matter. We see no stronger reason for penalizing the receiver under these circumstances than for penalizing those who have stood by without complaint and permitted him to perform valuable services of which they are beneficiaries.

[3] Irrespective of statute, it is generally held that no party interested in a receivership should be appointed receiver. The reasons are obvious, and it is not deemed essential to enumerate them. 34 Cyc. 142.

The statute is therefore but declaratory of the law as applied generally by courts of equity. And since it does not make void, but merely voidable, the appointment as receiver of an interested party, we think the question of compensation should be determined by the same principles of equity that have been applied by the courts, independently of the statute.

The following quotations, taken at random, the former from England, and the latter from Illinois, we think, correctly summarize the result of the adjudications upon this question:

"The authorities only go to this, that the court does not generally appoint a trusteee to be receiver at all, and that generally he will not

receive remuneration if he is appointed. But there is no inflexible rule. * * * Mr. Justice North has allowed what he thought reasonable. He had a discretion whether he would allow anything, and I think we ought not to interfere with that discretion, nor as to the amount he has thought it right to allow." Bignell v. Chapman, 1 Ch. 59 (1892).

"The general rule in such cases seems to be against the allowance of any compensation, but when the appointment is made without determining that the service shall be without compensation, whether an allowance shall be made or not, is generally left to the discretion of the chancellor, and is to be controlled by the circumstances of each particular case." Meissler v. Meissler, 101 Ill. App. 256.

For further authorities see 34 Cyc. 468 and notes 3 and 4.

In cases where a partner is appointed receiver of the partnership property, or a trustee or executor of the trust estate from which he receives compensation in his trust capacity, and perhaps in some other classes of cases, compensation is denied the receiver as a matter of law. But this doctrine has its foundation in considerations peculiar to the special relation of the receiver to the property he administers. Slater v. Slater, 78 App. Div. 449, 80 N. Y. Supp. 363; Berry v. Jones, 11 Heisk. (Tenn.) 206, 27 Am. Rep. 742; Bartelt v. Smith, 145 Wis. 31, 129 N. W. 782, Ann. Cas. 1912A, 1195. We are of opinion that the interest of James in the receivership was not such as to deprive him of fair compensation for his services as a matter of law. He was not himself a party to the suit, and only indirectly and partially interested in the Bank's claim, which claim was not relatively large; the receivership extended over a considerable period of time; the telephone plant was improved and enlarged and its patronage doubled; the receiver handled over $100,000 in the aggregate, and his responsibility was correspondingly great; and, in the end, he disposed of the property to great advantage., No act of his appears to have been complained of until he had completed his duties and filed his final account. We conclude that there was no abuse of discretion in making the allowance to James as compensation for his own services as receiver.

[4] Passing to the question of the allowance to James of $1,000 as the reasonable value of the services and expenses of Speed in making the sale, we have reached the conclusion that the trial judge did not abuse his discretion in making such allowance.

Article 2130 provides that, if any person should be appointed receiver of property situated in this state who is not at the time a bona fide citizen of this state and entitled to vote, all such appointments shall be absolutely null and void in so far as the property situated within this state is concerned.

But the order of appointment did not show on its face that Speed was disqualified by reason of being a nonresident, and we doubt whether, after he had acted under the appointment and had fully administered the property, his acts could be collaterally attacked on that ground. However, under the view we take, that question is not necessary to decide. The services and expenses for which the allowance was made were performed after Speed's interest in the property had determined; and, giving full effect to the statute, and construing the appointment as absolutely void, still we think it was within the discretion of the trial judge to allow to James remuneration, measured by the actual value of the services and expenses of Speed in making the sale. The receivership was valid, and the property in the court's custody, and the coreceiver, James, was acting under an appointment which, as we have held, must now be considered valid. It was not necessary for James to personally perform all of the labor necessary in the operation of the property or in its sale. He could employ the services of others, and where such services were actually performed and came properly within the province of the receiver and benefited the property which was in custody of the court, we see no valid reason why compensation should be denied, even though the services were performed by a person who, under the law, was disqualified from acting as receiver. If James had himself incurred the expenses and obtained the purchaser for the property, no sound objection to his receiving compensation commensurate with the services could be legally urged. That he did not perform these services in person, but accepted the labor of his coreceiver, does not, in our opinion, lessen his right to have compensation awarded him. The trial court seems to have carefully scrutinized this item and placed upon these services and expenses a valuation which in his opinion was fair and reasonable.

It is our opinion that the judgment of the Court of Civil Appeals should be reversed, and the judgment of the trial court affirmed, and that the costs of appeal, both in the Supreme Court and in the Court of Civil Appeals, should be assessed against the defendants in error.

PHILLIPS, C. J. The judgment recommended by the Commission of Appeals is adopted and will be entered as the judgment of the Supreme Court.