Joseph E. **ASHMORE**, Appellant,

v.

**NORTH DALLAS BANK & TRUST**, Appellee.

No. 05–90–00269–CV.

Court of Appeals of Texas, Dallas.

Dec. 19, 1990.

Rehearing Denied Jan. 28, 1991.

James J. Hartnett, James J. Hartnett, Jr., Dallas, for appellant.

B. Jay Carmichael, P. Keith Staubus, Dallas, for appellee.

Before WHITHAM, LAGARDE and WHITTINGTON, JJ.

## OPINION

LAGARDE, Justice.

Joseph E. Ashmore, Jr. successor trustee, appeals three orders from the probate court awarding former trustee, North Dallas Bank & Trust Co. (Bank), attorney's fees, trustee's fees, and custodian's fees. Ashmore complains that the probate court erred in authorizing payment of each of the three fees and that it abused its discretion in awarding $55,964.80 in custodian's fees. We overrule all of Ashmore's points of error, dismiss for want of jurisdiction the appeal of the orders awarding attorney's fees and trustee's fees, and affirm the order awarding custodian's fees and expenses.

## FACTUAL BACKGROUND

Following extensive negotiations, Bank became successor trustee to ten of the Hummel family trusts on June 18, 1987. A bank in Nevada served as trustee to these ten trusts prior to Bank. On December 31, 1987, Bank resigned as trustee. Pursuant to the terms of the trust agreement, Bank notified the trust advisors of its resignation and requested that they appoint a successor trustee.

On January 13, 1988, Bank filed a petition in the probate court for appointment of a successor trustee and a motion for instructions. In its motion, Bank requested

that the probate court instruct it on how to respond to requests from some of the Hummel trust advisors to make certain investments and stock purchases. Although Bank had resigned as trustee, it felt that it still owed fiduciary duties to the beneficiaries of the Hummel trusts and, therefore, could not simply abandon the trusts.

On April 13, 1988, Bank petitioned the probate court to appoint a receiver and to issue temporary orders on its previous motion for instructions. In an order signed June 27, 1988, the probate court appointed Ashmore as Receiver and also appointed Bank as Temporary Custodian until Ashmore selected, and the court approved, a successor custodian.

On December 5, 1988, Bank filed an application for attorney's fees for the period January 1, 1988 through November 30, 1988 and an application for trustee's fees for its services as trustee from January 1, 1988, through June 16, 1988. On January 4, 1989, the probate court signed two separate orders: one approved Bank's application for attorney's fees and the other approved Bank's application for trustee's fees. Both orders authorized Ashmore to pay those fees out of the trust estate.

The probate court appointed Ashmore as successor trustee on June 28, 1989. In this order of appointment, the probate court ordered Bank to submit its final account to Ashmore for its activities as temporary custodian from June 28, 1988, through June 28, 1989.

On October 26, 1989, Bank filed an application for payment of custodian's fees. On January 3, 1990, the probate court signed an order authorizing payment of custodian's fees to Bank. On February 2, 1990, Ashmore filed his notice to appeal both the January 4, 1989 orders and the January 3, 1990 order.

### ORDERS OF JANUARY 4, 1989 AWARDING ATTORNEY'S FEES AND TRUSTEE'S FEES

■ In his first two points of error, Ashmore contends that the probate court erred in awarding Bank attorney's fees and trustee's fees because to do so contravened the terms of the written Agreements entered into by Bank and the Hummel family. In response, Bank argues that Ashmore has waived these points by failing to timely perfect an appeal from these two orders. We agree.

This Court has previously held that an order rendered in a receivership proceeding awarding fees to the receiver and his accountant was final and appealable even though the order did not finally terminate the receivership. *Bergeron v. Session*, 554 S.W.2d 771, 773 (Tex.Civ.App.—Dallas 1977, no writ). This Court in *Bergeron* stated:

> A receivership is not like an ordinary lawsuit in which the issues may be drawn by the pleadings as soon as discovery is complete, and then promptly tried to a final judgment, which may then be enforced by execution. It is frequently an ongoing proceeding in which rights of various parties are determined by orders of the court from time to time, and it is not finally terminated until all of the assets in the hands of the receiver are applied to payment of claims or delivered to the parties determined by the court to be entitled.

*Id.* at 774–75.

Following *Bergeron*, we conclude that the two orders signed January 4, 1989, awarding attorney's fees and trustee's fees for services to the date of the orders, were final and appealable and further conclude that the appellate timetable began operating on that date. TEX.R.APP.P. 5(b)(1). Ashmore did not file his notice of appeal of these two final and appealable orders until February 2, 1990, clearly a date not within thirty days of January 4, 1989, as required by the Texas Rules of Appellate Procedure. TEX.R.APP.P. 41(a)(1). Consequently, Ashmore failed to timely perfect his appeal from those two orders. The rules prescribing the procedures necessary to perfect an appeal are mandatory and jurisdictional. *Davies v. Massey*, 561 S.W.2d 799, 801 (Tex.1978); *Abington v. Goss*, 408 S.W.2d 317, 318 (Tex.Civ.App.—Dallas 1966, writ ref'd n.r.e.). Failure to comply with these rules requires dismissal of the appeal. *Id.*

Accordingly, we dismiss for want of jurisdiction the appeal of the two orders signed by the probate court on January 4, 1989.

### ORDER OF JANUARY 3, 1990 AWARDING CUSTODIAN'S FEES

#### A. Entitlement

█ In his final two points of error, Ashmore complains that the probate court erred in authorizing payment of custodian's fees and, further, that it abused its discretion in the amount awarded: $55,964.80. Ashmore argues that the Agreements between Bank and each of the ten Hummel trusts preclude compensation for the type of work Bank performed as Temporary Custodian. The pertinent provisions common to all of the Hummel Trust Agreements are identical and are as follows:

2. There shall be no partial revocation, termination or distribution fee whatsoever.

The Bank agrees that, if it resigns or petitions any court to resign as Trustee at any time, that it will seek no additional attorneys' fees, court costs, photocopying charges, Trustee's fees or any other monies whatsoever in connection with said resignation or any unopposed petition to resign and further agrees that the only fees that may be awarded by a court are any fees due and owing under the terms of the Agreement for managing the trusts up to the *termination* of its trusteeship.
. . . .

9. The Bank will be entitled to reimbursement for all actual costs and expenses incurred in connection with the administration of the Trust, except for telephone, photocopying and postage charges incurred in connection with its performance of the ordinary and usual duties customarily performed by a Trustee in the State of Texas in the administration of trusts.

(Emphasis added.)

Contrary to Ashmore's contention, these provisions of the Trust Agreements authorize the probate court's award of custodian's fees and expenses to Bank. In its Application for Payment of Custodian's Fees and Expenses, Bank requests such fees for its services as custodian for the "considerable activity involved in the day to day operation and management of the Trusts and their assets pursuant to orders of the Court and instructions of the Receiver/Successor Trustee" during the pendency of the court-supervised receivership proceeding. The probate court specifically approved Bank's Application for Payment of Custodian's Fees and Expenses in its January 3, 1990 order awarding custodian's fees and expenses. Also, at the hearing on Bank's Application for Payment of Custodian's Fees and Expenses, Kim Cheshier, the Bank's personal trust officer responsible for the operation of the Hummel Trusts, testified that during the period that Bank served as Temporary Custodian, Bank rendered numerous services to the Receiver and the probate court regarding the management of trust operations.

The Trust Agreements provide that a court may award fees to Bank for managing the trusts up to the *termination* of the trusteeship. The trusteeship did not terminate until June 28, 1989, when the probate court appointed Ashmore as Successor Trustee and ordered Bank to transfer all of the assets and liabilities in its possession to Ashmore. The Bank's services as Temporary Custodian and its fiduciary obligations to the beneficiaries continued until June 28, 1989, when a successor trustee was appointed. *See Republic Nat'l Bank & Trust Co. v. Bruce*, 130 Tex. 136, 139–40, 105 S.W.2d 882, 884–85 (1937) (trustee's fiduciary duties are not discharged until trustee has been replaced by a successor trustee).

To further support his contention that the award of custodian's fees was not authorized, Ashmore cites *James v. Roberts Tel. & Elec. Co.*, 206 S.W. 933 (Tex.Comm'n App.1918, judgm't adopted). In *James*, the court recognized the rule that where a partner or trustee is appointed receiver of the property or estate from which he receives compensation, he is denied compensation for his services as receiver. *Id.* at 935. However, the rule recognized in *James* applies only to a receiver, not a

custodian. The probate court appointed Ashmore as Receiver and Bank as Temporary Custodian. Thus, the award of custodian's fees to Bank does not conflict with the holding in *James.*

Ashmore argues that *James* applies because Bank's role as Temporary Custodian was to perform one of the statutory functions of a receiver, to take charge and keep possession of the property. TEX.CIV.PRAC. & REM.CODE ANN. § 64.031(1) (Vernon 1986). Bank did not "take charge" of the property and make investment decisions regarding the trusts. Rather, Bank retained possession of the assets of the trusts and prepared accountings, assembled documentation, copied trust files, paid bills, renewed certificates of deposit, and gathered information for the preparation of title transfer documentation, all at Ashmore's request. Bank's services as Temporary Custodian did not rise to the level of those of a receiver.

We conclude that neither the Hummel Trust Agreements nor *James* prohibits the award of custodian's fees and expenses to Bank. Accordingly, Ashmore's third point of error is overruled.

### B. Amount

 In his final point of error, Ashmore argues that the probate court abused its discretion in awarding $55,964.80 in custodian's fees and expenses. Bank attached exhibits to its Application for Payment of Custodian's Fees and Expenses. These exhibits set forth a line by line itemization of the services Bank rendered as Temporary Custodian. Bank applied for $72,423.30 and the probate court awarded Bank $55,-964.80. Bank rendered valuable services as a Temporary Custodian to Ashmore, the Receiver, by preserving the assets of the trusts and assisting in their management. Bank is entitled to compensation for its services. We find that the probate court did not abuse its discretion in awarding Bank $55,964.80 in custodian's fees and expenses and, accordingly, overrule Ashmore's fourth point of error.

## CONCLUSION

We hold that Ashmore failed to timely perfect an appeal from the two January 4, 1989 orders awarding attorney's fees and trustee's fees to Bank. Accordingly, for want of jurisdiction, we dismiss the appeal of those two orders. Further, finding no error in the probate court's award of custodian's fees and expenses to Bank, we affirm the January 3, 1990 order.