**The ART INSTITUTE OF CHICAGO, Appellant,**

v.

**INTEGRAL HEDGING, L.P., Integral Arbitrage, L.P., Integral Equity, L.P., Integral Hedging Offshore, Ltd., Integral Investment Management, L.P., Integral Management, L.L.C., Genesis Market Neutral Partners, L.P., Galileo Fund Offshore, L.P., Conrad Seghers, and James Dickey, Appellees.**

No. 05–02–01314–CV.

Court of Appeals of Texas, Dallas.

July 25, 2003.

Edward S. Koppman, John Eric Gambrell, Akin, Gump, Strauss, Hauer & Feld. L.L.P., Dallas, for Appellant.

Theodore W. Daniel, Jenkens & Gilchrist, P.C., Lawrence J. Friedman, Friedman & Feiger, L.L.P., Robert Cole, Jr., Brady & Associates, Dallas, for Appellees.

Before Justices MOSELEY, LANG, and LAGARDE.[1]

## OPINION

Opinion By Justice MOSELEY.

This is an appeal from an interlocutory order directing a court appointed receiver for two of appellees to pay an amount of attorneys' fees to appellees' attorneys out of the receivership assets. In three issues, the Art Institute of Chicago (the Institute) argues the trial court had no basis for entering the order because the court refused to find the fees reasonable and necessary, no evidence was admitted of an agreement authorizing the fees or of the fee statements supporting the amount of fees, and the issue of liability for the fees had not yet been determined in the Institute's pending application for a temporary injunction. At our request, the parties filed letter briefs on the question of our jurisdiction over this appeal. We conclude we do not have jurisdiction over this appeal and dismiss the appeal for want of jurisdiction.

### BACKGROUND

In general, this is a suit for fraud, securities fraud, breach of fiduciary duty, conspiracy and an accounting involving the Institute's investment of approximately $43 million in two limited partnerships, Integral Hedging, L.P., and Integral Arbitrage, L.P. (the "Funds"). The Institute allegedly made these investments in reliance on representations made by two of the appellees, Conrad Seghers and James Dickey, that the Funds would be managed using a proprietary low-risk investment strategy. This strategy allegedly allowed the assets of the Funds to be protected from a decline in value of up to 30%. In addition, the Institute alleged appellees represented that 70% of the investment would be maintained in "cash positions" (with at least 40% unencumbered) to protect against margin increases, market shocks, and unforeseen events. The investments were made as contributions to the limited partnerships whereby the Institute became a limited partner in both of the Funds.

The Institute made its investments in the months shortly before the terrorist attack on the World Trade Center on September 11, 2001. Following those tragic events, the Institute tried to learn of the status of its investment and eventually learned that one, if not both, of the Funds had allegedly lost almost 90% of its value, a result supposedly impossible under the proprietary investment strategy touted by appellees.

The Institute filed this suit against both Funds, the general partner of the Funds, Integral Investment Management, L.P. ("Investment Management"), the general partner of Investment Management, Integral Management, L.L.C. ("Management"), Seghers and Dickey, who were the alleged principals of Management, and several other entities and partner-

---

1. The Honorable Sue Lagarde, Justice, Court of Appeals, Fifth District of Texas at Dallas, Retired, sitting by assignment.

ships[2] allegedly owned or controlled by Seghers and Dickey in which the Institute's investment had allegedly been placed. The Institute sought damages for fraud, securities fraud, breach of fiduciary duty, inducement of breach of fiduciary duty, and conspiracy to commit these acts. It also sought a constructive trust, an accounting, appointment of a receiver or special master for the Funds and the Institute's investment, dissolution of the limited partnerships, and temporary and permanent injunctions preventing the transfer of assets traceable to the Institute's investment or the use of assets of the Funds to pay ongoing management fees to Seghers and Dickey and attorneys' fees of appellees.

During the course of this litigation, the trial court appointed a special master with limited powers to investigate the status of the Institute's investment and report to the court. Later, the trial court entered an order expanding the role of the special master and appointing him as a special administrator, "in the nature of and like a receivership, but not quite the same." The order appointing the administrator specified his authority, including the power to give prior written approval of any transfer of money held in any financial institution by the Integral Defendants[3] that was generated by the Institute's investment. The order also stated it would have no effect on expenditures for ordinary business expenses, including historic salaries for Seghers and Dickey, and legal expenses, so long as the expenditures were not made

with funds traceable to the Institute's investment.

Appellees filed a motion to modify the order appointing the administrator to permit them to pay their attorneys' fees even from assets traceable to the Institute's investment. Appellees claimed the limited partnership agreements allowed such expenses to be paid by the partnerships.

After additional hearings and a report by the administrator on substantial transfers in the accounts of the Integral Defendants and payments to attorneys[4] shortly before appointment of the administrator, the trial court, apparently by agreement of all the parties, ruled from the bench that no transfers, withdrawals, or transactions of any kind in the accounts and assets of the Integral Defendants would be made without prior written approval of the administrator. The administrator was also given sole authority over the bank accounts of the Integral Defendants, including, in the administrator's discretion, authority over the personal bank accounts of Seghers and Dickey, for a period of two weeks unless extended by the court. This ruling was confirmed in a written order signed on May 8, 2002. The ruling was extended until further order of the court by an order signed May 15, 2002.

On June 21, 2002, the trial court heard arguments regarding appellees' motion to modify the order appointing the administrator to allow them to pay their attorneys' fees out of the assets of the Funds, even if those assets were traceable to the Insti-

2. Integral Equity, L.P., Integral Hedging Offshore, Ltd., Genesis Market Neutral Partners, L.P., and Galileo Fund Offshore, L.P. Additional parties were named as defendants in the petition, but they are not parties to this appeal.

3. The Funds, Investment Management, Management, Integral Equity, L.P., Integral Hedging Offshore, Ltd., Genesis Market Neutral

Partners, L.P., and Galileo Fund Offshore, L.P. are collectively referred to as the "Integral Defendants."

4. The report showed payments totaling over $1,250,000 to the lawyers representing appellees for the period of January, February, and March, 2002. The report showed transfers to Seghers and Dickey of more than $500,000 from December 1, 2001 to April 15, 2002.

tute's investment. At this hearing, appellees' counsel represented to the court that between $250,000 and $300,000 in attorneys' fees and expenses were pending. The trial court stated he would approve payment of $100,000 to the firm representing appellees and $20,000 to Dickey's individual attorney.

On June 24, 2002, the hearing continued as to several matters, including the Institute's motion to reconsider the use of partnership funds for appellees' attorneys' fees. Appellees had relied on two articles in the limited partnership agreements as authority for payment of the attorneys' fees. The first allegedly allowed costs and expenses of litigation involving the partnerships, with some exceptions, to be included in partnership expenses. The second allegedly allowed the partnerships to indemnify the general partner and its affiliates in certain circumstances and allowed advance payment of expenses in certain cases.[5] In response, the Institute argued partnership expenses only included litigation expenses incurred in litigation with third parties, not litigation between the limited partners and the general partner. The Institute also cited another provision in the limited partnership agreements that it argued precluded any indemnity, even for expenses, if the suit contained allegations of securities fraud. The Institute attached portions of a second amended and restated agreement of limited partnership of Integral Hedging, L.P. to its motion to reconsider. None of the parties offered evidence at this hearing, nor did the par-

ties tender a complete copy of the limited partnership agreements to the trial court.

On June 24, 2002, after hearing argument of counsel but without receiving the partnership agreements in evidence, the trial court signed an order on advance payment of fees, directing the administrator to pay reasonable and necessary attorneys' fees and expenses of the general partner of the Funds and its affiliates (both as defined in the limited partnership agreements) in defending any suit in advance of the final disposition of the suit, conditioned on the receipt of an undertaking by the general partner or affiliate to repay such amounts if it is ultimately determined that the general partner or affiliate is not entitled to indemnity. The order also established a procedure for the appellees to submit documentation supporting their request for reasonable and necessary attorneys' fees and expenses (excluding criminal fees) to the administrator. This order was amended on July 3, 2002, to clarify the procedure to allow the Institute three days after the administrator's recommendation on the fee application to present objections, and for forwarding the recommendation and objections to the court for hearing. The Institute did not appeal either of these orders.[6]

On June 26, 2002, appellees submitted their attorneys' fees statements to the administrator and filed a response to the Institute's motion to reconsider and an emergency application for approval of the attorneys' fees and expenses. Attached to

5. These provisions appear to implement article eleven of the Texas Revised Limited Partnership Act. TEX.REV.CIV. STAT. ANN. art. 6132a–1, §§ 11.01–11.21 (Vernon Supp.2003). Section 11.11 allows the advance payment of reasonable expenses incurred by a general partner in defending an action after the partnership receives a written affirmation by the general partner of its good faith belief it

meets the standards for indemnification under the act and a written undertaking by the general partner to repay the amount paid if it is ultimately determined the general partner did not meet the standard or indemnification is prohibited by section 11.05. *Id.* § 11.11.

6. We express no opinion on whether these orders would have been appealable.

the response were written undertakings signed by Seghers and Dickey individually and on behalf of Investment Management to each of the Funds. The fee statements submitted to the administrator totaled over $359,000 for the unpaid attorneys' fees and expenses in handling this and several other matters. Of this total, the lead attorneys for appellees submitted statements for the months of April and May, 2002 totaling over $296,000. The attorneys for Seghers and Dickey submitted statements for over $34,000 and over $29,000, respectively.

The Institute filed written objections to the attorneys' fees statements submitted by appellees. The Institute also filed an unsworn application for temporary injunction seeking to enjoin the use of partnership assets for the payment of management, asset allocation, and attorneys' fees of the general partner and related entities.

The attorneys' fees statements, redacted for alleged privilege communications, were tendered on the record at a proceeding on July 3, 2002. The court stated repeatedly that this proceeding was not a hearing and that the Institute would have three days to present objections.[7] At the July 3, 2002 proceeding, the attorney representing the administrator stated on the record he had reviewed the attorneys' fees statements and they were reasonable. Neither the administrator nor his attorney took any position regarding who would be liable for payment of the fees.

On August 8, 2002, the trial court began a hearing on the Institute's objections to the attorneys' fees statements. One of those objections was that a fully executed copy of the limited partnership agreements had not been put in evidence. The Institute also claimed that because the In-

tegral Defendants, Seghers, and Dickey were not registered investment advisors, they were not entitled to receive fees, could not perform the limited partnership agreements, and the partnership agreements were void. Another objection was that if any fees were authorized under the limited partnership agreements, they were limited to fees defending suits and many of the fees claimed were for prosecuting lawsuits as plaintiffs. The trial court admitted in evidence certificates from the State Securities Board that the Integral Defendants, Seghers, and Dickey were not registered to sell securities or render investment advice in the state of Texas, and pleadings from several lawsuits showing the Integral Defendants as plaintiffs.

After additional hearings on the receivership application, the parties announced a potential agreement for: (1) the appointment of the administrator as a receiver for the Funds; (2) payment of $150,000 from the receivership assets to appellees' attorneys, without waiving any objections to the pending application or future applications for additional fees; (3) setting a hearing on the objections to the pending fee application and a new one being filed by appellees; and (4) dismissal of a pending motion to disqualify. The record indicates the parties never reached a final agreement on all of these terms. However, the parties later presented to the trial court two similar versions of an order appointing a receiver. The trial court directed the parties to submit separate orders for the receivership and for payment of $150,000 to appellees' attorneys. The Institute requested the trial court hold off on the attorneys' fees until the hearings on the fee applications and the temporary injunction were

7. The exhibits tendered at this proceeding are not included in the record before us. However, copies of the redacted fee statements are

attached to the Institute's objections to defendants' attorneys' fees, which is in the record.

completed. The trial court refused, stated the order would not waive any objections to the fee applications, and struck language from the proposed order finding appellees were entitled to an award of attorneys' fees and that the $150,000 were reasonable and necessary for the defense of this case.

On August 19, 2002, the trial court signed the order appointing a receiver and a separate order regarding attorneys' fees. The order regarding attorneys' fees directs the receiver immediately to pay the sum of $150,000 to the attorneys for appellees and authorizes the receiver to sell assets to pay this sum and the outstanding fees currently owed the receiver. The Institute appeals the August 19, 2002 order regarding attorneys' fees as to the payment to the appellees' attorneys.

### APPELLATE JURISDICTION

■ Because this is an appeal from an interlocutory order and the case does not appear to fit within any of the statutory grounds for an appeal from an interlocutory order, we questioned our jurisdiction and requested the parties to brief the issue. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014 (Vernon Supp.2003). Statutes authorizing appeals from interlocutory orders are strictly construed. *Dallas County Cmty. College Dist. v. Bolton,* 990 S.W.2d 465, 467 (Tex.App.-Dallas 1999, no pet.). As relevant to this case, the civil practice and remedies code allows an appeal from an interlocutory order that "appoints a receiver or trustee" or that "over-

rules a motion to vacate an order that appoints a receiver or trustee." TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(1), (2). The statute also allows an appeal from an interlocutory order granting or refusing a temporary injunction. *Id.* § 51.014(a)(4). Neither subsection 51.014(a)(1) nor 51.014(a)(2) gives us jurisdiction over this appeal because the Institute does not challenge the order appointing the receiver and no motion to vacate the appointment of the receiver was filed or ruled on by the trial court.

■ The Institute argues we have jurisdiction because the order effectively denied its request for a temporary injunction against payment of attorneys' fees from the assets of the Funds. However, the Institute agrees that the trial court never completed the hearing on the temporary injunction. We conclude the trial court did not rule on the application for a temporary injunction and our jurisdiction cannot be invoked under section 51.014(a)(4). The form of the order is a direction or authorization to the receiver in this case. It is not an order granting or denying a temporary injunction. Further, an appeal from an interlocutory order granting or refusing a temporary injunction cannot be used as a vehicle for carrying other non-appealable interlocutory orders to the appellate court. *Bobbitt v. Cantu,* 992 S.W.2d 709, 712 (Tex.App.-Austin 1999, no pet.).[8]

■ The final possible basis for jurisdiction is the exception to the one final judgment rule for discrete orders in receiver-

---

**8.** The scope of an interlocutory appeal is also limited by the statutory grant of jurisdiction. *Smith v. Davis,* 999 S.W.2d 409, 417 (Tex. App.-Dallas 1999, no pet.). Thus, even if the order denied a temporary injunction, we would only review the denial of the injunction, not the order directing the payment of attorneys' fees by the receiver. If we treat the order as a denial of a temporary injunction, it appears the trial court did not abuse its discretion because neither the Institute's June 27, 2002 application for temporary injunction nor its first amended original petition and application for receivership and temporary and permanent injunction is verified. *See* TEX.R. CIV. P. 682 (no writ of injunction may be granted without a verified petition).

ship proceedings recognized by *Huston v. FDIC*, 800 S.W.2d 845 (Tex.1990), and *Bergeron v. Session*, 554 S.W.2d 771 (Tex.Civ. App.-Dallas 1977, no writ).[9]

In *Huston*, the Texas Supreme Court held "that a trial court's order that resolves a discrete issue in connection with any receivership has the same force and effect as any other final adjudication of a court, and thus, is appealable." 800 S.W.2d at 847. The court analogized final orders in a receivership to similar orders in probate proceedings. "A probate order or judgment is final if it conclusively disposes of and is decisive of the issue or controverted question for which that particular part of the proceeding was brought, even if the decision does not fully and finally dispose of the entire probate proceeding." *Id.* at 848. The issue in *Huston* was whether creditors of a failed bank were entitled to receive interest on their claims before distributions to shareholders where there was a surplus in the receivership. *Id.* at 846. The FDIC as receiver had filed a final accounting and the shareholders filed an application for a final dividend of the surplus. The trial court ordered that the creditors were not entitled to interest on their claims, but did not terminate the receivership until six months later. *Id.* The court held the order determining the entitlement to interest was a final order and appealable. *Id.* at 848.

■ The Texas Supreme Court clarified the test for finality of probate orders in *Crowson v. Wakeham*, 897 S.W.2d 779, 783 (Tex.1995). The court recognized the requirements that a party's substantial rights be adjudicated and that the order dispose of all issues in the phase of the proceeding for which it was brought are equally important in determining whether an order is appealable. *Id.* The court established the following test for probate appeals:

> If there is an express statute ... declaring the phase of the probate proceedings to be final and appealable, that statute controls. Otherwise, if there is a proceeding of which the order in question may logically be considered a part, but one or more pleadings also part of that proceeding raise issues or parties not disposed of, then the probate order is interlocutory.

*Crowson*, 897 S.W.2d at 783. The same standards apply to orders rendered during a receivership proceeding. *Huston*, 800 S.W.2d at 848.

In *Bergeron*, we recognized a limited exception to the one final judgment rule, by analogizing receiverships to probate proceedings. *Bergeron*, 554 S.W.2d at 775. We concluded that an order in a receivership that "finally disposes of the main controverted issue concerning which the present proceeding was brought," was a final appealable order. *Id.* The order in *Bergeron* determined the final compensation of the receiver and his accountant from the beginning of the receivership to the hearing on the receiver's motion for fees and to terminate the receivership. The trial court awarded fees up to the hearing, but refused to terminate the receivership. While we recognized an exception to the one final judgment rule, we agreed that the exception should be narrow. *Id.* at 774. The order in *Bergeron* was within the exception because the trial court pur-

**9.** Although the order allows the receiver to sell assets, it does not direct him to sell a specific asset or confirm such a sale. There is no showing that it will be necessary for the receiver to sell assets in order to comply with the order. Moreover, the authorization to sell assets is not sufficient to make the order a final determination subject to appeal. *See Bean v. Peurifoy*, 74 S.W.2d 126, 126 (Tex.Civ. App.-Dallas 1934, no writ) (interlocutory order directing receiver to sell property not appealable).

ported to determine the final compensation of the receiver and his accountant. However, we recognized the limits of the exception in our decision on the merits in *Bergeron v. Sessions,* 561 S.W.2d 551, 553 (Tex.App.-Dallas 1977, writ ref'd n.r.e.). We concluded that if the "trial court does not purport to determine the total value of the receiver's fee up to a certain time, the order will be interlocutory and not appealable." *Id.* Partial advances against a final fee award during a pending receivership would not be subject to appeal under the exception. *Id.* We concluded that "appellate review of each intermediate award of final fees would unduly hinder the administration of the receivership." *Id.* at 554.

To come within this exception to the final judgment rule, the order appealed from must finally dispose of all issues in a discrete part or phase of the receivership. *See Crowson,* 897 S.W.2d at 783; *Huston,* 800 S.W.2d at 848. We conclude the order before us did not. At the time the order was signed, appellees had submitted an application for over $359,000 in attorneys' fees and expenses and the Institute had filed and argued several objections to those fees. The record shows the hearing on the objections had not been completed. The record of the trial court's ruling on the order makes it clear the trial court was not finished with the application for attorneys' fees or with the Institute's objections to the application. The trial court repeatedly stated the Institute would not waive any objections to the additional fees and the trial court refused to make a finding that the $150,000 were reasonable and necessary or even that appellees were entitled to an award of that amount. These issues were left open for further consideration by the trial court. Thus, the order was not final.

The Institute relies on *Azbill v. Dallas County Child Protective Services,* 860 S.W.2d 133 (Tex.App.-Dallas 1993, no writ) and *Ashmore v. North Dallas Bank & Trust,* 804 S.W.2d 156, 158 (Tex.App.-Dallas 1990, no writ) to argue for jurisdiction of this appeal. Neither case supports our jurisdiction over this order. *Azbill* was neither a receivership nor a probate appeal, but an appeal from a judgment terminating parental rights and a divorce decree in the same proceeding. *Azbill,* 860 S.W.2d at 135. We applied the one final judgment rule and determined the termination judgment was the final judgment of the court and the divorce decree was a nullity. *Id.* at 139. *Azbill* does not apply to this case.

*Ashmore* was a probate case where a successor trustee appealed three separate orders awarding attorneys' and trustee's fees and custodian fees to the former trustee of several trusts. *Ashmore,* 804 S.W.2d at 158. The bank resigned as trustee of several trusts and filed a petition in probate court for the appointment of a successor trustee and for instructions for handling the trust property in the interim. The probate court appointed Ashmore as receiver and the bank as temporary custodian until a successor custodian was selected by the receiver and approved by the court. *Id.* The bank then filed an application for all of its attorneys' fees from the filing of the petition to just prior to the date of the motion and for trustee's fees for the time it acted as trustee from the date it filed the petition to the date the court appointed it temporary custodian. *Id.* The probate court signed two orders approving the applications and authorizing Ashmore to pay the attorneys' and trustee's fees out of the trust estate. Several months later, and after Ashmore was appointed successor trustee, the bank applied for custodian fees for the time it acted as temporary custodian. The probate court authorized the custodian fees and thirty days later, Ashmore filed a notice of ap-

peal from all three orders. This court concluded "the two orders signed January 4, 1989, awarding attorney's fees and trustee's fees for services to the date of the orders, were final and appealable and further conclude[d] that the appellate timetable began operating on that date." *Id.* The appeal of the two orders was dismissed for want of jurisdiction because the appeal was not timely perfected. *Id.* at 159.

*Ashmore* is distinguishable because the orders in that case finally disposed of all issues in distinct phases of the proceeding. The bank applied for all of its attorneys' fees in the probate proceeding and the order finally disposed of that application through the date of the order. Similarly, the bank filed an application for all of its trustee's fees for the time it continued to act as trustee after filing the petition for appointment of a successor trustee. The bank would not make any additional applications for trustee's fees because it had been appointed temporary custodian and no longer served as trustee. The probate court finally disposed of this application in its order approving the trustee's fees. In contrast, the order before us merely ordered a certain amount paid to appellees' attorneys without disposing of all the issues raised in appellees' application for attorneys' fees and in the Institute's objections to those fees. Thus, it was not a final determination. Further, appellees' application for attorneys' fees was only the first in what will likely be several such applications during the course of the receivership. Thus, this phase of the receivership, appellees' entitlement to and the amount of reasonable attorneys' fees and expenses, will not be finally decided until much later in the proceeding. Therefore, we distinguish *Ashmore* from this case.

The Institute argues strenuously that the trial court abused its discretion in or-

dering payment of fees without, among other things, receiving evidence of signed limited partnership agreements allowing payment of such fees, without receiving the fee statements in evidence, without finding the fees were reasonable and necessary, and without ruling on the Institute's objections to the fees. Whatever the claimed errors of the trial court, we conclude the Institute has no remedy by appeal of this interlocutory order. No statute authorizes an appeal from this interlocutory order. Further, the order did not finally resolve all issues in a distinct phase of the receivership proceeding. Thus it is not a final order and is not appealable. We dismiss this appeal for lack of jurisdiction.