# NO. 12-06-00222-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN THE GUARDIANSHIP OF* | § | *APPEAL FROM THE* |
| *LUKE FORREST HUMPHREY,* | § | *COUNTY COURT AT LAW #3* |
| *AN INCAPACITATED PERSON* | § | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

This is an interlocutory appeal from orders entered in the guardianship of Luke Forrest Humphrey, an incapacitated person. His mother, Susan McLendon, and his aunts, JoAnn Bowshot and Patricia Pondoff, raise various complaints concerning venue, the temporary guardian, the temporary restraining order, the sanctions order, the ad litem and his fees, and the temporary injunction. We modify in part, affirm in part, reverse and remand in part, and dismiss in part.

### BACKGROUND

Luke Forrest Humphrey was involved in an automobile accident on January 27, 2005, which left him completely incapacitated at the age of nineteen. In April 2005, the court appointed his father, Landy Humphrey, to be temporary guardian and J. Scott Killough to be attorney ad litem and guardian ad litem. Thereafter, Killough filed an application to convert the temporary guardianship to a permanent guardianship. McLendon opposed the appointment of her ex-husband to the position of permanent guardian and filed an application to have herself appointed Luke's permanent guardian.

On August 5, 2005, the trial court granted the ad litem's motion to withdraw as guardian ad litem. Killough remains as attorney ad litem for Luke. On April 13, 2006, Bowshot and Pondoff

filed a motion to remove Humphrey as the temporary guardian and appoint McLendon to be Luke's guardian. On April 21, 2006, Killough filed a motion to compel discovery and for sanctions alleging that McLendon took possession of medical records and would not allow him to get a copy. A month later, Killough filed an application for a temporary restraining order and temporary injunction requesting the court order that McLendon have no contact with Luke and refrain from communicating in any inappropriate manner with anyone at Glen Rose Medical Center Nursing Home where Luke is a resident. The motion is supported by the affidavits of Marilyn Ledbetter, a nurse at Glen Rose Medical Center Nursing Home, and David Dennis, administrator of that facility. At 8:42 a.m. on May 26, 2006, the trial court signed a temporary restraining order restraining McLendon from communicating with her son, communicating with anyone at the nursing home in any offensive manner, threatening to take unlawful action against Luke or anyone at the nursing home, and from disturbing the peace there. At a hearing later that same morning, the court granted Killough's motion to compel and for sanctions ordering McLendon to turn over certain medical records and pay $1,888.00 for expenses and attorney's fees incurred as a result of her thwarting the discovery process. At the same hearing, the court ordered Humphrey to pay $2,000.00 in attorney ad litem fees and McLendon to pay $9,400.00 in attorney ad litem fees.

On June 9, 2006, the trial court heard Killough's motion to convert the temporary restraining order to a temporary injunction. After one witness testified, McLendon stated on the record that she had no objection to the temporary injunction. The court entered an order converting the temporary restraining order into a temporary injunction to be in effect throughout the pendency of the temporary guardianship or until further order of the trial court. The permanent order restrained her from engaging in the same acts as the temporary order. McLendon signed the order, approving and consenting to it as to both form and substance.

On June 23, 2006, McLendon filed a notice of appeal from the May 26 order requiring payment of the attorney ad litem's fees and the order on the motion for discovery sanctions of the same date. Also on June 23, McLendon filed her notice of appeal from the May 26 temporary restraining order and the June 9 temporary injunction. On June 28, Bowshot and Pondoff filed a notice of appeal to join the appeal from the May 26 and June 9 orders.

On July 6, Killough filed a motion for an amended order converting the temporary restraining

2

order to a temporary injunction. He requested an amended order on the grounds that the June 9 order did not fully state the court's findings and did not clearly state the final hearing date for the conversion of the temporary guardianship to a permanent guardianship. That motion was granted and an amended order entered at a hearing held on August 4.

## BOWSHOT AND PONDOFF

McLendon, Bowshot, and Pondoff filed a single brief jointly arguing their complaints regarding the trial court's orders. However, none of the orders pertain to Bowshot or Pondoff. An appellate court reviews the issue of a party's standing de novo. *In re A.J.L.*, 108 S.W.3d 414, 419 (Tex. App.–Fort Worth 2003, pet. dism'd). An appealing party may not complain of errors that do not injuriously affect it or that merely affect the rights of others. *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 843 (Tex. 2000). Standing is a necessary component of subject matter jurisdiction, which is essential to the authority of the court to decide a dispute. *Cook v. Exxon Corp.*, 145 S.W.3d 776, 780 (Tex. App.–Texarkana 2004, no pet.). Since Bowshot and Pondoff lack standing, we dismiss all issues as to them.

## APPOINTMENT OF TEMPORARY GUARDIAN

In her issues one and two, McLendon's complaints arise from the trial court's appointment of the temporary guardian. The appointment of the temporary guardian becomes moot when the permanent guardian is appointed. *See In re Berry*, 105 S.W.3d 665, 666 (Tex. App. -- Beaumont 2003, no pet.). The trial court entered an order appointing a permanent guardian on May 17, 2007. An appeal from that order is pending in this court and we take judicial notice of the record. *See Victory v. State*, 138 Tex. 285, 288, 158 S.W.2d 760, 763 (Tex. 1942). We dismiss McLendon's issues one and two.

## VENUE

In issues three and three(b), McLendon asserts the trial court erred in establishing venue in Smith County. On May 3, 2005, there was a hearing on McLendon's motion to transfer venue to Gregg County and by order of May 4, 2005, the trial court denied that motion.

McLendon did not request a transcript of the May 3 hearing and it is not included in our record. Where no reporter's record is filed, we presume that the evidence adduced at the hearing supported the court's order. *See In re Berry*, 105 S.W.3d at 667. We overrule McLendon's issues three and three(b).

## TEMPORARY RESTRAINING ORDER

In her fourth issue, McLendon complains of the entry of the temporary restraining order. A temporary restraining order is generally not appealable. *See In re Tex. Natural Res. Conservation Comm'n*, 85 S.W.3d 201, 205 (Tex. 2002) (orig. proceeding). We dismiss McLendon's fourth issue.

## ATTORNEY AD LITEM FEES

In her ninth issue, McLendon contends the trial court erred in assessing attorney ad litem fees against her in the May 26, 2006 order, an assessment she argues is contrary to the mandates of the Texas Probate Code. Killough responds that the order authorizing payment of attorney ad litem fees is not an appealable probate order because it does not dispose of all parties or issues in a particular phase of the proceeding. We disagree.

A final order of a court that exercises original probate jurisdiction is appealable to this court. *See* TEX. PROB. CODE ANN. §§ 5(g), 606(g) (Vernon Supp. 2007). Here, the probate code authorizes payment of attorney ad litem fees, but there is no express statute that controls appeal of the order to pay those fees which declares such an order to be final and appealable. In order to appeal a probate matter, it is not necessary that the decision, order, or decree fully and finally dispose of the entire probate proceeding. *Youngs v. Choice*, 868 S.W.2d 850, 852 (Tex. App.–Houston [14th Dist.] 1993, writ denied). Instead, such an order is appealable if it finally disposes of the issue or controverted question for which that particular part of the proceeding was brought. *Brittingham-Sada de Ayala v. Mackie*, 193 S.W.3d 575, 578 (Tex. 2006); *Crowson v. Wakeham*, 897 S.W.2d 779, 782-83 (Tex. 1995). This is because a probate court conducts its business in a continuing series of events. *Christensen v. Harkins*, 740 S.W.2d 69, 74 (Tex. App.–Fort Worth 1987, no writ). Interlocutory appeal is necessary to provide practical review of erroneous, controlling, intermediate decisions before their consequences become irreparable. *Garner v. Long*, 106 S.W.3d 260, 266 n.3 (Tex.

4

App.–Fort Worth 2003, no pet.).

The May 26 order required McLendon to pay Killough $9,400.00 in attorney ad litem fees within thirty days of the date of the order. The fees were attributable to all of the work Killough did on behalf of his client, Luke Humphrey, from June 13, 2005 until May 9, 2006. The issues regarding payment of the attorney ad litem for his work for that time period were resolved at the May 26 hearing. Thus, the order authorizing attorney ad litem fees concluded a discrete phase of the guardianship proceedings in the probate court and is final and appealable. *See Roach v. Rowley*, 135 S.W.3d 845, 848 (Tex. App.–Houston [1st Dist.] 2004, no pet.); *Logan v. McDaniel*, 21 S.W.3d 683, 689 (Tex. App.–Austin 2000, pet. denied); *Ashmore v. North Dallas Bank & Trust*, 804 S.W.2d 156, 158 (Tex. App.–Dallas 1990, no writ).

Section 665A of the probate code provides that payment of a fee set by the court as compensation to the attorneys appointed in a guardianship is to be taxed as costs in the case. Act of May 27, 1995, 74th Leg., R.S., ch. 1039, § 28, 1995 Tex. Gen. Laws 5145, 5157 (amended 2007) (current version at TEX. PROB. CODE ANN. § 665A (Vernon Supp. 2007)). It further provides that if the proposed ward is unable to pay for the attorney's services, the county is responsible for the cost of those services. *Id*.

The trial court relied on Rule of Civil Procedure 141 as authority for assessing the attorney ad litem fees against McLendon rather than applying Section 665A. Rule 141 states that a trial court "may, for good cause, to be stated on the record, adjudge the costs otherwise than as provided by law or these rules." TEX. R. CIV. P. 141. However, rule 141 conflicts with the specific mandate of probate code Section 665A. When a rule of procedure conflicts with a statute, the statute prevails. *Few v. Charter Oak Fire Ins.*, 463 S.W.2d 424, 425 (Tex. 1971). Accordingly, the trial court erred in assessing the attorney ad litem fees against McLendon. *See Overman v. Baker*, 26 S.W.3d 506, 512 (Tex. App.–Tyler 2000, no pet.). We sustain McLendon's ninth issue.

### WITHDRAWAL OF GUARDIAN AD LITEM

In her tenth issue, McLendon asserts the trial court erred in allowing Killough to withdraw as guardian ad litem. The order allowing withdrawal as guardian ad litem was entered August 5, 2005. Assuming it is an appealable order, McLendon failed to file a notice of appeal from that order.

5

Therefore, she has not perfected an appeal from that order. *See* TEX. R. APP. P. 25.1. We dismiss McLendon's tenth issue.

<h2 style="text-align:center">SANCTIONS</h2>

In her eleventh and twelfth issues, McLendon contends the trial court erred by entering the order sanctioning her for discovery abuse. In his motion to compel discovery and for sanctions, Killough alleged that McLendon obtained certain medical records from a document retrieval service, making them unavailable to Killough. He asked the court to compel McLendon to comply with the rules of civil procedure and provide him with copies of the documents. He also requested reimbursement for his expenses and fees.

At the hearing on Killough's motion, the first matter heard was a motion to withdraw filed by Howard Britain, McLendon's attorney, which the trial court granted. In open court, Britain turned over to McLendon a sealed copy of the medical records that are the subject of Killough's motion to compel.

Pamela Miller, owner of a document retrieval service called Records and Review, testified that she was in the process of getting Baylor Specialty Hospital records for Mr. Britain when McLendon began calling her office. Over the course of a week or week and a half, McLendon called her about a dozen times. Miller described McLendon as "unstable." Before the records arrived, Killough also requested a copy. The hospital sent the records to Miller, and McLendon went to Miller's office to pick up a copy of the records. Miller informed her that Killough also wanted a copy, and McLendon refused to allow him to have a copy of the records. Miller testified that a copy of the records would cost $369.00. Miller explained on cross examination that Killough received a copy of everything he ordered except the Baylor records. She also explained that she "was really afraid to make a copy at that point because of [McLendon's] actions. [McLendon] did not want him to have a copy."

Killough testified that he incurred $750.00 in attorney's fees related to the motion to compel. He asked that McLendon be sanctioned in the amount of $1,119.00, which included those fees and the $369.00 needed to pay for a copy of the records. During McLendon's cross examination of Killough, she asked him if he knew why she refused to give him the records. Later, the court

recessed the hearing to give McLendon the opportunity to hire an attorney to represent her.

The hearing resumed three weeks later. Killough presented additional evidence of attorney's fees for a total of $1,150.00 in fees. He asked for sanctions in the amount of $1,519.00, which included those fees and the $369.00 copying charge. The court granted Killough's motion to compel and for sanctions. The court ordered Pam Miller to secure the records from McLendon and provide a copy to Killough. It further ordered McLendon to pay Miller $369.00 for costs incurred in obtaining the records and to pay $1,519.00 to Killough as attorney's fees and expenses. About two months later, the trial court entered an order nunc pro tunc, deleting the paragraph ordering Miller to obtain the records and provide a copy to Killough and instead ordering McLendon to produce the original, sealed medical records to Killough. The remainder of the order was unchanged.

Rule of Civil Procedure 215.3 authorizes trial courts to impose appropriate sanctions upon persons who abuse the discovery process. TEX. R. CIV. P. 215.3. We review a trial court's imposition of sanctions for an abuse of discretion. *Am. Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 583 (Tex. 2006). The ruling will be reversed only if the trial court acted without reference to any guiding rules and principles, such that its ruling was arbitrary or unreasonable. *Id*. An imposition of discovery sanctions under Rule of Civil Procedure 215 must be just. *Spohn Hosp. v. Mayer*, 104 S.W.3d 878, 882 (Tex. 2003). First, a direct relationship between the offensive conduct and the sanction imposed must exist; and second, the sanction imposed must not be excessive. *Id*.

It is undisputed that Killough, as attorney ad litem, is entitled to a copy of Luke's medical records. Miller testified that McLendon refused to give the Baylor Specialty Hospital records to Killough. By ordering McLendon to produce the records and pay the fees and expenses related to her failure to abide by the discovery rules, the trial court tailored its order to remedy the prejudice caused by McLendon's act. Further, the sanction imposed is not excessive. However, it does not accurately reflect the evidence. The trial court ordered McLendon to pay the $369.00 copy fee twice. Appellate courts have the authority to modify incorrect judgments when we have the necessary information to do so. TEX. R. APP. P. 43.2(b); *Mullins v. Mullins*, 202 S.W.3d 869, 878 (Tex. App. –Dallas 2006, pet. denied). We therefore modify the order to read that McLendon is ordered to pay Killough $1,150.00 in fees in addition to paying Miller $369.00. With that modification, we overrule McLendon's eleventh and twelfth issues.

## TEMPORARY INJUNCTION

In her fifth and sixth issues, McLendon asserts the trial court violated her constitutional rights to due process, and her rights to face her accusers, defend herself, and submit rebuttal evidence. She complains that the court refused to accept her answer to the motion for temporary restraining order, which also addressed the issue presented at the June 9 hearing to convert the temporary restraining order into a temporary injunction. She also attacks the sufficiency of the evidence to support the order converting the temporary restraining order into a temporary injunction. She complains that Ledbetter and Dennis were not present at the hearing for her to cross examine. Further, she contends the trial court abused its discretion by granting the temporary injunction. In her seventh and eighth issues, McLendon contends the trial court erred by misrepresenting the facts concerning the signing of the order for the temporary injunction and putting her under duress to sign it.

On July 6, 2006, Killough filed a motion to amend the June 9 order because the order did not fully state the court's findings or set the hearing date for the conversion of the temporary guardianship to a permanent guardianship. After a hearing on August 4, 2006, the court signed an amended order that included the matters omitted from the June 9 order.

Rule 683 of the rules of civil procedure requires that every order granting an injunction shall set forth the reasons for its issuance and include an order setting the cause for trial on the merits with respect to the ultimate relief sought. TEX. R. CIV. P. 683. An order granting a temporary injunction that does not comply with those requirements is subject to being declared void and dissolved. *Interfirst Bank San Felipe, N.A. v. Paz Constr. Co.*, 715 S.W.2d 640, 641 (Tex. 1986). Therefore, the trial court's August 4 order replaced a void order. McLendon's notice of appeal perfecting her appeal from the June 9 injunction order applies to preserve her complaints as to the August 4 order. *See* TEX. R. APP. P. 27.3.

Because the June 9 order has been replaced, McLendon's seventh and eighth issues are moot. *See Brewer & Pritchard, P.C. v. Johnson*, 167 S.W.3d 460, 465 (Tex. App.–Houston [14th Dist.] 2005, pet. denied). Furthermore, by her statement that she had no objection to the injunction, McLendon consented to the order. Such consent constitutes a waiver of the remainder of her complaints about the entry of the temporary injunction. *See Baw v. Baw*, 949 S.W.2d 764, 766 (Tex. App.–Dallas 1997, no writ). We overrule issues five and six and dismiss issues seven and eight.

8

## DISPOSITION

We *affirm* the trial court's August 4, 2006 order converting the temporary restraining order to a temporary injunction and the May 4, 2005 order denying a change in venue.

We *modify* the May 26, 2006 discovery sanctions order to order McLendon to pay Killough $1,150.00 in fees and *affirm* as *modified*.

We *reverse* the trial court's May 26, 2006 order authorizing payment of attorney ad litem fees and expenses to the extent it orders McLendon to pay $9,400.00 in attorney ad litem fees and expenses. We *remand* the cause for the trial court to enter an order in compliance with probate code Section 665A.

For want of jurisdiction, we *dismiss* all issues as to Bowshot and Pondoff as well as the portions of McLendon's appeal relating to the April 26, 2005 order appointing a temporary guardian, the May 4, 2005 order confirming the appointment of a temporary guardian, the August 5, 2005 order permitting Killough to withdraw as guardian ad litem, the May 26, 2006 temporary restraining order, and the June 9, 2006 order converting the temporary restraining order to a temporary injunction.

All pending motions in this cause, 12-06-00222-CV, are overruled as moot.

　SAM GRIFFITH　
Justice

Opinion delivered June 18, 2008.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)

9